[S. F. No. 12626. In Bank.—March 2, 1928.]

BARTLETT HAYWARD COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and JOHN GEORGE SLATE, Respondents.

R. P. Wisecarver and Redman & Alexander for Petitioners.

John B. Haas, John D. Home and G. C. Faulkner for Respondents.

SHENK, J.—This is a proceeding to review and annul an order of the Industrial Accident Commission. On October 2, 1922, John George Slate, a boilermaker's helper, thirty-seven years of age, suffered an injury arising out of and in the course of his employment with the petitioner, Bartlett Hayward Company, which caused the loss of his right eye. On June 1, 1923, he filed an application for compensation under the provisions of the Workmen's Compensation Act. (Stats. 1917, p. 831.) The jurisdictional facts were stipulated and the only issue was the disability rating. At the hearing before the Commission it appeared that the applicant had previously, in 1914, lost the sight of his left eye, and after the accident in 1922 the applicant was sightless. On July 12, 1923, the Commission found that "said injury caused permanent disability consisting of loss of sight of right eye, with cosmetic defect due to coloboma of iris, upper half of iris being torn loose; also cosmetic defect of upper lid, margin of upper lid being sigmoid-shaped. The percentage of said permanent disability is 25, entitling him to $20.83 a week for 100 weeks, amounting to $2,083.00," and made its award accordingly. No petition for a rehearing was filed. Nothing thereafter was done by the applicant with reference to the award until after the decision of this court in the Liptak case, which was decided on December 16, 1926. (*Liptak* v. *Industrial Acc. Com.*, 200 Cal. 39 [251 Pac. 635].) In that case the petitioner had previously been deprived of the sight of one eye. He then lost the sight of his remaining eye in an industrial accident and sought compensation therefor. The Commission made an award, basing the same on a partial disability rating of twenty-six and one-fourth per cent. He contended before the Commission that he was entitled to a rating of permanent total disability on the theory that the loss of his remaining eye was a total and permanent loss of vision. He sought a rehearing, which was denied. On his petition for a writ of review this court decided that upon a proper construction of subdivisions (9) and (10) of subsection 2 of section 9 of the act (Stats. 1917, p. 839, as amended), the petitioner was entitled to a permanent total disability rating, annulled the award, and directed the Commission to proceed in accordance with such determination.

Thereafter, on March 4, 1927, the applicant herein filed with the Commission his petition praying that the Commission amend its findings and award to conform to the holding in the Liptak case and allow a rating of one hundred per cent permanent disability. The Commission entertained the petition, granted a hearing, and on May 14, 1927, made its order reciting that "good cause" appeared therefor and amended its former findings and award to the end that applicant should receive compensation based on one hundred per cent permanent disability. Subsequently and within the time prescribed by law the employer, Bartlett Hayward Company, and its insurance carrier, Ocean Accident and Guaranty Corporation, Ltd., applied for a rehearing on the ground, among others, that the Commission acted without and in excess of its jurisdiction, claiming that the findings and award of July 12, 1923, had finally adjudicated the rights of the parties and that there was not shown any new or further disability which would give the Commission the power to increase the award pursuant to the continuing jurisdiction conferred on it by subdivision (d) of section 20 of the act. (Stats. 1917, p. 850.) The application for a rehearing was denied, whereupon this proceeding was brought.

If the Commission had the power to reopen the case and amend its award under the foregoing facts, such power was derived from section 20 (d) of the act of 1917, which provides: "(d) The Commission shall have continuing jurisdiction over all its orders, decisions and awards made and entered under the provisions of sections six to thirty-one, inclusive, of this act and may at any time, upon notice, and after opportunity to be heard is given to the parties in interest, rescind, alter or amend any such order, decision or award made by it upon good cause appearing therefor, such power including the right to review, grant or regrant, diminish, increase or terminate, within the limits prescribed by this act, any compensation awarded, upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished or terminated; *provided,* that no award of compensation shall be rescinded, altered or amended after two hundred forty-five weeks from the date of the injury. Any order, decision or award rescinding, altering or amending a prior order,

decision or award shall have the same effect as is herein provided for original orders, decisions or awards.''

The respondents take the position that the power given by the foregoing provisions of the act is a broad power which enables the Commission, during the continuing jurisdiction so vested in it, to rescind, alter or amend any order, decision or award on good cause being shown therefor; that the phrase ''such power including the right to review, grant or regrant, diminish, increase or terminate . . . any compensation awarded upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished or terminated,'' does not have the effect of limiting the power of the Commission exclusively to that specifically defined, but on the contrary operates as an extension definitely of the power of the Commission to that specifically mentioned. On the other hand, petitioners contend that the portion of the section last quoted is such a limiting phrase and has been so interpreted by this court in the case of *Georgia Casualty Co.* v. *Industrial Acc. Com.*, 177 Cal. 289 [170 Pac. 625], and in cases referring to that case with approval. The Georgia Casualty Company case, decided in January, 1918, announced the construction and meaning of section 25 (d) of the Workmen's Compensation Act of 1913. (Stats. 1913, p. 293.) Section 25 (d) of the 1913 act provided: '' (d) The Commission shall have continuing jurisdiction over all its orders, decisions and awards made and entered under the provisions of sections twelve to thirty-five, inclusive, of this act and may at any time, upon notice, and after opportunity to be heard is given to the parties in interest, rescind, alter or amend any such order, decision or award made by it upon good cause appearing therefor; *provided,* that no award of compensation shall be rescinded, altered or amended after two hundred and forty-five weeks from the date of the accident. . . . '' Section 82 of the act of 1913 (Stats. 1913, p. 317), in subdivision (a) thereof, authorized any party aggrieved to apply to the Commission for a rehearing on five separate grounds and none others, and subdivision (b) of said section provided as follows: ''Nothing contained in this section shall, however, be construed to limit the right of the Commission, at any time within two hundred forty-five weeks from the date of its award, and from time to time,

after due notice and upon the application of any party interested, to review, diminish, or increase, within the limits provided by this act, any compensation awarded upon the grounds that the disability of the person in whose favor such award was made has either increased or diminished or terminated.'' In the Georgia Casualty Company case it was held that said sections 25 (d) and 82 (b) of the 1913 act should be read together and when so read section 82 (b) operated as a limitation upon the more general terms of section 25 (d) and confined the subject matter of the re-examination within the 245 weeks to new facts occurring since the original award and not to a reconsideration of the facts upon which the former award was made. That proceeding was commenced by the filing of the petition in this court on July 17, 1916. Before the legislature of 1917 convened, the petitioner had served its brief on counsel for the Commission wherein the claim was advanced that although said section 25 (d) standing alone would appear on its face to give 'the Commission unlimited jurisdiction to alter or amend its awards at any time within 245 weeks from the date of the injury, yet when said section 25 (d) was read and considered in connection with said section 82 (b) it should be concluded that the legislature intended to limit the power of the Commission in so altering or amending its awards to the ground only that the disability of the person in whose favor such award was made has either increased or diminished or terminated. It is not difficult to surmise that this attack on the power of the Commission was the subject of consideration by the legislature in 1917 and that it prompted the amendments to the statute and re-enactments therein during that session. The subject matter of section 82 (b) of the 1913 act relating to rehearings before the Commission was incorporated and re-enacted in section 65 of the new statute (Stats. 1917, p. 874). There was this significant change, however, in the amended and re-enacted statute. The grant of the continuing jurisdiction was eliminated from said section 65 and subdivision (b) thereof was made to read as follows: '' (b) Nothing contained in this section shall, however, be construed to limit the grant of continuing jurisdiction contained in subsection (d) of section twenty of this act.'' Subsection (d) of section 20 was then worded as above quoted. The vital question now presented is: Did

the legislature in 1917, by the enactment of section 20 (d) of the act, intend to enlarge the continuing jurisdiction of the Commission or to leave the same as it had theretofore been in force? We are persuaded that the enactments of 1917, when properly construed, had the effect of enlarging the power of the Commission in its continuing jurisdiction. We approach the subject in this regard in the light of the history of the workmen's compensation laws in this state, both constitutional and statutory.

At the special election held October 10, 1911, the original constitutional provision (section 21 of article XX) was adopted, in which it was provided that "the legislature may by appropriate legislation create and enforce a liability on the part of all employers to compensate their employees for any injury incurred by the said employees in the course of their employment irrespective of the fault of either party. . . . '' This step was a distinct innovation in this state respecting liability and remedies as between employer and employee. It enabled the legislature to deprive the trial courts of the state of jurisdiction over such disputes and to deny to the employee the right to a jury trial. (*Dominguez* v. *Pendola,* 46 Cal. App. 220 [188 Pac. 1025].) It also took from the workman many other common-law remedies. As compensation for such deprivations, it enabled the legislature to afford him compensation regardless of his own negligence. While the new laws on this subject have administered a severe wrenching to many preconceived notions of legal wrongs and remedies, a casual observation of the tendency of such legislation and of the construction and interpretation thereof by the courts has disclosed a gradual breaking away from the technical rules of practice and procedure in the administration of such laws. Section 86 (a) of the act of 1913 (Stats. 1913, p. 319) definitely enjoined a liberal construction of the act upon the courts in the following language: "Whenever this act, or any part or section thereof, is interpreted by a court, it shall be liberally construed by such court.'' This language was in general terms, and applicable to either party to a proceeding. Section 69 (a) of the act of 1917 (Stats. 1917, p. 877) went further and provided: "Whenever this act, or any part or section thereof, is interpreted by a court, it shall be liberally construed by such court with the purpose of extending

the benefits of the act for the protection of persons injured in the course of their employment.'' We also find the direct mandate of the people of the state in section 21 of article XX of the constitution, as amended in 1918, as follows: ''The legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create and enforce a complete system of workmen's compensation, by appropriate legislation. . . . A complete system of workmen's compensation includes . . . full provision for otherwise securing the payment of compensation; and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without encumbrance of any character; all of which matters are expressly declared to be the social public policy of this state, binding upon all departments of the state government.

''The legislature . . . may fix and control the method and manner of trial of any such dispute, the rules of evidence and the manner of review of decisions rendered by the tribunal or tribunals designated by it.''

By the foregoing constitutional amendment the legislation of 1917 was given the stamp of approval as the social public policy of the state in its remedial and humanitarian purposes. So when the language of section 20 (d) of the act of 1917 is approached in the light of the foregoing considerations, the conclusion seems inevitable that it was intended thereby to enlarge and extend the continuing jurisdiction of the Commission beyond that which had obtained under the act of 1913. Indeed, the wording of the 1917 enactment, without any collateral aids of interpretation, would seem to admit of no other reasonable construction than that by so combining sections 25 (d) and 82 (b) of the 1913 act into section 20 (d) of the Statute of 1917, it was intended by the use of the phrase ''including the right'' to enlarge and extend the continuing jurisdiction of the Commission beyond the power theretofore possessed by it merely to ''review, grant or regrant, diminish, increase or terminate'' any compensation awarded upon the ground that the disability had ''recurred, increased, diminished or terminated'' and to

embrace the power to rescind, alter or amend its orders, decisions and awards within the period of 245 weeks "upon good cause appearing therefor."

The interpretation of section 20 (d) of the act of 1917 was under consideration by the district court of appeal in the case of *Kennedy* v. *Industrial Acc. Com.*, 50 Cal. App. 184 [195 Pac. 267]. In that case it was contended by the petitioner that the enactment of section 20 (d) in 1917 endowed the Commission with no broader powers than were conferred upon it by sections 25 (d) and 82 (b) of the act of 1913 as construed by this court in the Georgia Casualty Company case. Commenting on this contention, it was said by the court, speaking through Mr. Presiding Justice Finlayson: "The vice of counsel's argument lies in the assumption that the 'continuing jurisdiction' conferred upon the Commission by the act of 1917 is no greater or other than that which had been conferred upon it by the act of 1913. Under the act of 1913 'continuing jurisdiction' was given to the Commission in general terms by subdivision d of section 25. . . . No such narrow construction can be put upon the language of subdivision d of section 20 of the present act whereby 'continuing jurisdiction' is conferred upon the Commission. The sections of the act of 1913 that related to the Commission's continuing jurisdiction—section 25, subdivision d, and section 82, subdivision b—could be harmonized only by construing the general terms of section 25 as limited by the more restrictive language of section 82. But the broad grant of continuing jurisdiction as conferred by the general terms of subdivision d of section 20 of the present act is not to be thus limited by the more particular reference in that section to the Commission's right to 'review, grant, or regrant, diminish, increase or terminate' any award upon the ground 'that the disability of the person in whose favor such award was made has either recurred, increased, diminished or terminated.' True, subdivision d of section 20 of the present act is, to a large extent, a re-embodiment, *mutatis mutandis*, of subdivision d of section 25 and subdivision b of section 82 of the act of 1913, the provisions of these two sections of the act of 1913 being embodied with but few, but important, changes in subdivision d of section 20 of the act of 1917. But though subdivision d of section 20 of the act of 1917 is largely a re-embodiment of subdivision d of sec-

tion 25 and subdivision b of section 82 of the act of 1913, still subdivision d of section 20 of the present act is vastly different from a mere re-enactment of the corresponding provisions of the act of 1913. The present act, in subdivision d of section 20, declares, in general terms, that at any time within 245 weeks from the date of the injury the Commission 'shall have continuing jurisdiction over its orders, decisions and awards . . . and may at any time, upon notice and after opportunity to be heard is given to the parties in interest, rescind, alter or amend any such order, decision or award made by it, upon good cause appearing therefor.' This general grant, in itself unlimited save as to the time within which the power may be exercised, is followed by a more particular provision, namely, a particular reference to the power of the Commission to review, grant, or regrant, diminish, increase or terminate any award 'upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished, or terminated.' But the language of this more specific or particular reference to the exercise of the Commission's 'continuing jurisdiction,' so far from limiting the preceding general grant of power, implies the very opposite. The use of the word 'including' in the phrase 'such power, *including* the right to review' etc., indicates that the power that the Commission may exercise under its grant of continuing jurisdiction is more than the mere power to 'review, grant or regrant, diminish, increase or terminate' an award on the ground that the disability has 'recurred, increased, diminished or terminated.' 'Including' is not a word of limitation. Rather, it is a word of enlargement, and in ordinary signification implies that something else had been given beyond the general language that precedes it. (*Fraser* v. *Bentel*, 161 Cal. 394 [Ann. Cas. 1913B, 1062, 119 Pac. 509]; *In re Goetz*, 71 App. Div. 272 [75 N. Y. Supp. 750].) As here employed, the word 'including' is used to express the idea that the specific power to review, grant or regrant, diminish, increase, or terminate an award upon the ground that the disability has recurred, increased, diminished, or terminated—a particular power specifically referred to in the section of the present act—is but a part of the larger and more comprehensive power conferred by the more general language of the immediately preceding clause of the section. One of the

definitions of 'include,' as given by Webster, is: To comprehend or comprise, as a genus the species, *the whole a part*, an argument or reason the inference; to contain; to embrace.

''For these reasons we conclude that the particular power conferred by that clause of subdivision d of section 20 which begins with the words 'such power, *including* the right to review' is but a part of, and not a limitation upon, the larger and more general power granted by the clause which confers upon the Commission 'continuing jurisdiction' or power 'to rescind, alter or amend any . . . order, decision or award made by it, good cause appearing therefor.' ''

True, in denying a petition for hearing in this court any intimation of an opinion as to the correctness of the construction placed upon the language of section 20 (d) of the act of 1917 as to the continuing jurisdiction of the Commission was reserved. The decision was fully supported on other grounds. But on further consideration we are satisfied that the construction placed upon the enactment of 1917 by the district court of appeal is in harmony with the spirit and intent of our workmen's compensation laws as contemplated by the constitution of the state and the attitude of the legislature. Indeed, such construction reflects the obvious meaning of the language of the statute. To hold otherwise would be to amend the act by judicial interpretation.

It is our conclusion, therefore, that the continuing jurisdiction of the Commission as provided by section 20 (d) of the act of 1917 is not limited to the consideration of changes in the physical condition of the workman, but is extended to the right to rescind, alter, or amend the orders, decisions, or awards upon good cause appearing therefor. What constitutes ''good cause'' depends largely upon the circumstances of each case. The term is relative. It may be assumed that the determination of the Commission as to what constitutes ''good cause,'' while entitled to great weight, would not be conclusive. Certainly it may be said, so far as the facts in the present case are concerned, that the mistake or inadvertence of the Commission in giving the injured workman, Slate, a rating of twenty-five per cent permanent disability, when as matter of law on the undisputed facts he was entitled to a rating of one hundred per cent permanent disability, would constitute ''good cause''

for the exercise of continuing jurisdiction of the Commission. In fact, the demands of justice would seem to require that the compensation be so increased under the circumstances here shown.

It is earnestly insisted by the petitioners that to extend the continuing jurisdiction of the Commission to include the power to "rescind, alter or amend" any "order, decision or award made by it upon good cause appearing therefor," except when a change in the physical condition of the employee is shown, is to do violence to the doctrine of *res adjudicata*, which it is claimed the legislature plainly intended to engraft upon the Workmen's Compensation Act by the provisions thereof relating to rehearings before the Commission. The contention is predicated on the terms of sections 64 and 65 of the act. Section 64 in subsection (a) (Stats. 1917, p. 873) provides that any party or person aggrieved by any final order, decision, award, rule, or regulation of the Commission may apply to the Commission for a rehearing thereon. Subdivision (b) provides that "no cause of action arising out of any such order, decision or award shall accrue in any court to any person until and unless said person shall have made application for such rehearing and such application shall have been granted or denied." Subdivision (c) provides that "such application shall set forth specifically and in full detail the grounds upon which the applicant considers said final order, decision, award, rule or regulation is unjust or unlawful and every issue to be considered by the Commission. . . . The applicant for such hearing shall be deemed to have finally waived all objections, irregularities and illegalities concerning the matter upon which said rehearing is sought other than those set forth in the application for such hearing." Subdivisions (d) and (e) (Stats. 1917, p. 874), relate largely to procedural matters on the rehearing. Subdivision (f) provides that "If after such rehearing and a consideration of all the facts, including those arising since the making of the order, decision or award involved, the Commission shall be of the opinion that the original order, decision or award, or any part thereof, is in any respect unjust or unwarranted, or should be changed, the Commission may abrogate, change or modify the same." Parenthetically it may here be observed that if the argument of the petitioners with reference

to the construction of the phrase in section 20 (d) of the present act, namely, "including the right to review, grant or regrant, diminish, increase or terminate any compensation awarded" be applied to the phrase in subdivision (f) of section 64 of the act, namely, "including those [facts] arising since the making of the order, decision or award"—and we perceive no reason why the same argument might not properly be applied to both—it would inevitably follow that the power of the Commission on rehearing would be confined to a consideration of those facts only as had arisen since the making of the original order, decision or award, and would exclude from further consideration the facts arising prior thereto. Such a conclusion would not bear the semblance of reason, as the obvious purpose of the rehearing is to enable the Commission to re-examine all the facts and circumstances occurring prior to the order, decision or award—and not only the facts, but also the law in the premises.

Reverting to the further terms of the act governing rehearings, it is provided in subdivision (a) of section 65 that "at any time within twenty days after the service of any final order or decision of the Commission awarding or denying compensation or arising out of or incidental thereto, any party or parties aggrieved may apply for such rehearing upon one or more of the following grounds and upon no other grounds": The specific allowable grounds for rehearing are next set out and are as follows:

"(1) That the Commission acted without or in excess of its powers. (2) That the order, decision or award was procured by fraud. (3) That the evidence does not justify the findings of fact. (4) That the applicant has discovered new evidence, material to him, which he could not, with reasonable diligence, have discovered and produced at the hearing. (5) That the findings of fact do not support the order, decision or award."

It is then provided in subdivision (b) that "nothing contained in this section shall, however, be construed to limit the grant of continuing jurisdiction contained in subdivision (d) of section twenty of this act." In view of the foregoing provisions of sections 64 and 65 it is argued by the petitioners that since the employee in the present proceeding made no application for a rehearing before the

Commission, and by that means did not seek to correct the award and obtain the lawful rating on his total permanent disability, he not only became estopped from seeking redress in the courts, but the power of the Commission to act in the premises was exhausted. It is clear from the terms of subdivision (b) of section 64 that the employee Slate was barred from resorting to the courts for redress by his failure to apply for a rehearing, but from that fact it would not follow that the Commission was estopped from exercising its continuing jurisdiction when invoked by the employee or on the Commission's own motion. We find no provision of the act which operates as an estoppel as against the Commission to exercise its continuing jurisdiction within the stated time, either as to the changed condition of the injured employee or as to the other matters, law or fact, which would constitute "good cause" for the exercise thereof.

■ The principles involved in the doctrine of *res adjudicata* are incorporated in the Code of Civil Procedure (sec. 1908 et seq.), but those sections of the code are merely declaratory of the common-law rules. (*Ferrea* v. *Chabot*, 63 Cal. 564, 567.) ■ Since, by the Workmen's Compensation Law the injured employee has been deprived of the rules of the common law as weapons of offense to obtain redress for injuries sustained by him, it would seem to be in harmony with the spirit, purpose, and intent of such laws not to permit (except where, in the furtherance of the proper administration of the law, it should be done) common-law rules to be invoked by his adversary as weapons of defense to defeat his claim. (See *Brooks* v. *A. A. Davis & Co.*, 124 Okl. 140 [254 Pac. 68, 70].) The doctrine of *res adjudicata* rests in estoppel. The act in question imposes an estoppel against the employee as to any recourse to the courts, unless he applies for a rehearing before the Commission. ■ But when we have in mind the question of the power of the Commission, the purpose and intent of the law is to vest in the Commission complete control of controversies between employer and employee subject to the rules and regulations provided by the legislative branch. Resort to and interference by the courts may take place only in accordance with such rules and regulations. It is not to be assumed that the Commission will abuse its powers. If it should do so the legislature in the act itself has provided

adequate means for a check through the instrumentality of the courts.

There is nothing novel in vesting in a Commission, such as our Industrial Accident Commission, the power to correct its mistakes both as to the law and the facts after it has once acted and in the furtherance of justice as between the parties. The United States government and all but four of the states have enacted workmen's compensation laws. By act of Congress compensation for injuries to civil employees of the United States has been provided for. The Commission appointed to administer the law is given power to modify prior awards by ending, increasing, or diminishing the compensation, or, if compensation has been once refused, to award compensation as the equities of each case may require. (39 U. S. Stats. at Large, 742, 749, secs. 37, 38; 5 U. S. C. A., secs. 787, 788.) In the states of Pennsylvania, Texas, Colorado, Kansas, and the Territory of Hawaii the Commission may review its prior awards because of changed conditions, and may rescind, alter, or amend the same upon equitable grounds, such as mistake, fraud, coercion, undue influence, or gross inadequacy or excessiveness in the prior award. In the states of New York, Massachusetts, Maryland, Ohio, Oklahoma, Utah, and West Virginia the Commission or administrative body may modify its prior awards within the compensation period as in its opinion may be justified. In Delaware, Georgia, Idaho, Indiana, Kentucky, Missouri, Nebraska, South Dakota, Vermont, and Virginia the continuing jurisdiction of the Commission would seem to be limited by the wording of the statute to the power to modify a prior award on account only of a change of conditions. That is, in these ten states there is no specific provision of the statute authorizing the Commission to rescind, alter, or amend prior awards on equitable grounds. The court in at least one of those states, however, has construed this grant of power to include the right on the part of the Commission to set aside a prior award on such grounds. (*Vodopich* v. *Trojan Min. Co.*, 43 S. D. 540 [180 N. W. 965].) In Minnesota the Commission is authorized to modify its prior awards for cause. North Dakota has substantially the same provision. In Wisconsin the single ground of "mistake" is specified. In

Wyoming the continuing jurisdiction is merely to terminate the award when the employee has fully recovered.

Generally it may be said that a survey of the Workmen's Compensation Laws in the several jurisdictions discloses that the idea of continuing jurisdiction has been put into almost universal practice. The vesting of power in the Commission to change its awards on account of the changed conditions of the injured employee is a common statutory provision, and placing within the discretion of the Commission the power to modify prior awards on equitable grounds is not uncommon.

The petitioners point out that in many states where continuing jurisdiction is vested in the Commission to correct its mistakes or modify its awards on equitable grounds, there is no provision for a rehearing. This may be conceded, but it does not therefore follow that such continuing jurisdiction may not properly be granted the Commission when a rehearing is also provided for. In Colorado both are provided for and are made effective. (*Employers' Mut. Ins. Corp.* v. *Industrial Commission of Colorado,* 78 Colo. 501 [242 Pac. 988]; *State Compensation Ins. Fund.* v. *Industrial Commission of Colorado,* 80 Colo. 130 [249 Pac. 653].)

It is earnestly insisted by the petitioners that this court and the district courts of appeal, since the adoption of the 1917 act have adhered to the Georgia Casualty Company case and have foreclosed the respondents herein as to their present contentions. The cases of *McBride* v. *Industrial Acc. Com.,* 182 Cal. 407 [187 Pac. 1050], *National Engineering Corp.* v. *Industrial Acc. Com.,* 193 Cal. 422 [225 Pac. 2], *Hogcbcrg* v. *Industrial Acc. Com.,* 201 Cal. 169 [256 Pac. 413], *Northern Redwood Co.* v. *Industrial Acc. Com.,* 44 Cal. App. 61 [185 Pac. 991], *Grand Union Hotel* v. *Industrial Acc. Com.,* 67 Cal. App. 123 [226 Pac. 76], and *Benton* v. *Industrial Acc. Com.,* 74 Cal. App. 411 [240 Pac. 1021], are particularly referred to and relied upon.

In the foregoing cases varying situations of fact were presented. In the McBride case the Commission has reserved its award for medical, surgical, and hospital treatment pending the procuring of vouchers and necessary information for a supplemental award. In denying a petition for rehearing the application for writ of review, this court very correctly stated that the Georgia Casualty case,

which was relied on by the petitioner, was not in point on the question presented. The National Engineering Corporation case was one involving a changed condition in the disability of the employee and this circumstance, it was held, distinguished the case from the Georgia Casualty Company case. It is unnecessary to mention chronologically or otherwise the many orders of the Commission in the Hogeberg case which it was contended operated as *res adjudicata* and prevented a reopening of the case by the Commission after the twenty-day period. It is sufficient to say, as was pointed out in the opinion in that case, that the prior orders were not on the merits and therefore did not operate as a bar to a rehearing of the case on the ground of changed disability. The rule of the Georgia Casualty Company case was referred to with apparent approval, but what was said on that subject was not necessary to the decision and the change in the statute after the decision in the Georgia Casualty Company case was not commented upon. In the Northern Redwood Lumber Company case the district court of appeal considered that it was bound by the Georgia Casualty Company case in interpreting section 20 (d) of the 1917 act without, however, noting the change in the language of the section. The Grand Union Hotel case involved a change in the physical condition of the employee during the period between the submission of the case to the Commission and the date of the award. The court held that the date of submission was controlling and not the date of the award and that the Georgia Casualty Company case would not govern because the point there decided was not involved. In the Benton case the district court of appeal followed its own case in *Hindes* v. *Industrial Acc. Com.*, 73 Cal. App. 726 [239 Pac. 339], which in turn was based on the Georgia Casualty Company case with apparently no consideration given to the amended statute.

It is thus seen that of the seven cases which it is contended by petitioners finally establish the meaning to be given to the language of section 20 (d) of the 1917 act, one, the Georgia Casualty Company case, interpreted the provisions of the 1913 act; and the only two in point of the other six cases, the Northern Redwood Lumber Company case and the Benton case, followed the interpretation of the

1913 act in the Georgia Casualty case without noting the change in phraseology in the 1917 act nor considering what, if any, change of meaning it effected. In fact, no case cited or found in our research, with the exception of the Kennedy case, has recognized that there has been a change in the wording of the section. When the conclusion is once reached that the 1917 legislature accomplished a material change in the effect of the law governing the continuing jurisdiction of the Commission, and such a conclusion cannot be avoided, the inappropriateness of following the Georgia Casualty Company case as controlling authority in the construction of the later law is apparent. It is not contended by any party to this proceeding that the Georgia Casualty Company case was not correctly decided on the then existing law. Nor do we now question the soundness of its conclusions. What we do hold is that that case and the other cases which follow it and rely upon it cannot serve as controlling precedents for the proper interpretation of the subsequent and different legislation.

The petitioners urge, as an additional reason why the award involved herein should be annulled, that the Liptak case was wrongly decided, and they suggest that should it be deemed advisable now so to declare, it would then become unnecessary at this time to determine the broader question of the scope of the continuing jurisdiction of the Commission under the 1917 statute. Whatever may be the arguments for and against the correctness in point of law or the wisdom of the decision in the Liptak case, it is enough to say that the decision in that case is only collateral to the paramount question of jurisdiction in the case at bar. If the economic result of the law as declared in the Liptak case has been to place one-eyed men in a disfavored class from the employer's standpoint, the remedy in their favor should be sought from the legislature which has plenary power in the premises.

Finally it is contended by petitioners that the effect of judicial approval of the extension of the continuing jurisdiction of the Commission to questions of equitable and kindred cognizance would result in consequences to insurance carriers never heretofore contemplated. It is stated that the petitioner insurance carrier has set aside no reserve

in anticipation of the exercise of such power by the Commission and is therefore unprepared to meet such an unexpected emergency. It is further stated that, if the continuing jurisdiction contended for by the Commission is recognized and exercised, it will be impossible to write insurance covering compensation hazards in this state. No difficulty seems to have been encountered in covering such hazards in the light of the long exercise by the Commission of its continuing power to increase awards during the 245 weeks on account of change in the physical condition of the employee. Without investigating the subject we venture the assertion that in the many jurisdictions where the continuing jurisdiction of the Commission extends as well to a consideration of equitable grounds in the modification of prior awards, insurance companies are engaged in assuming the hazards of industrial compensation. Furthermore, the petitioners would seem to assume that the exercise by the Commission of its broader powers would necessarily result in the increase of such hazards. We think not. Without doubt the Commission will be called upon in many cases by the employer and the insurance carrier as well as by the employee to alter, amend, or rescind an award for mistake, fraud, etc., as the right and justice of the case may require. It cannot be assumed that the mere possession of power to act would result in the exercise of that power in favor of one class of litigants as against another.

The net result of the recognition of the continuing jurisdiction of the Commission over controversies pending before it for the full period provided by the legislature will make for the final adjustment of such controversies by the tribunal established by the people of the state for that particular purpose and in a manner in harmony with the spirit and purpose of the workmen's compensation law. The desirability of repose in controversies before the Commission by lapse of time, so earnestly urged by the petitioners, is fully appreciated. But it is for the legislature and not for the courts to say how long the determination of a controversy involving an industrial accident shall remain in the breast of the Commission before the same shall be barred by lapse of time. Assuming the existence of the power in the Commission, the period of 245 weeks is not now questioned as a

proper legislative declaration of the time within which the power may be exercised.

The award is affirmed.

Seawell, J., Richards, J., Preston, J., Curtis, J., Waste, C. J., and Langdon, J., concurred.

Rehearing denied.

All the Justices concurred.