[Civ. No. 4999. Third Appellate District.—November 8, 1933.]

O. H. CHAIN, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, MRS. LOUISE DAUGHERTY et al., Respondents.

Nutter & Hancock, Nutter & Rutherford and A. P. Hayne for Petitioner.

A. I. Townsend and Everett A. Corten for Respondents.

PULLEN, P. J.—This petition to review an award of the Industrial Accident Commission (Workmen's Compensation Act, Stats. 1917, p. 831) discloses that Charles A. Daugherty, the applicant before the commission, was employed by petitioner, a general building contractor. During the course of his employment Daugherty was assigned the duty of passing lumber from the ground floor to a fellow employee on the roof. To do so he stood upon a scaffold in the center of the building against which the

lumber to be passed was placed, one end resting against the scaffold. While so engaged the scaffold collapsed, injuring applicant.

The scaffold upon which applicant was standing at the time of his injury was from eight to ten feet high, the platform of which was made of two planks, one end being supported by what is known among builders as a "horse", and the other end supported by a built-up structure of two uprights, a horizontal cross-piece on top of three cross-braces.

The first application filed by the injured employee for compensation was on December 12, 1931, against his employer, the petitioner herein, and the insurance carrier. A hearing was had and an award made granting applicant compensation until termination of disability. The order discharged O. H. Chain, the employer, from liability. Thereafter the insurance carrier petitioned to have a permanent rating fixed, and the Industrial Accident Commission amended its former award by granting applicant a fixed total amount. This order also contained the language, "It is ordered that the employer herein be dismissed and discharged from liability herein." This award was immediately paid. In the meantime and on March 31, 1932, applicant filed a new petition before the commission making the charge for the first time that the employer was guilty of serious and wilful misconduct. This application is entitled "Amended Application" and briefly states that the injury which he sustained on March 5, 1930, was proximately caused by the serious and wilful misconduct of his employer O. H. Chain. The application closes with a prayer that the portion of the original award discharging O. H. Chain for liability be set aside and annulled and that the applicant be allowed fifty per cent of all compensation heretofore awarded him. The employer answered the petition, denying the charge of serious and wilful misconduct, alleged that the proceeding was barred by section 11 of the Workmen's Compensation Act, and further pleaded that the award of February 7, 1932, had become final due to the fact that more than twenty days had elapsed between the date of the award and the petition charging serious and wilful misconduct.

A hearing was had upon the issues thus raised and on April 28, 1933, the commission made its award finding the employer guilty of serious and wilful misconduct and assessing against him and in favor of applicant, fifty per cent of the permanent award. A petition for rehearing was denied and the matter is now before us for consideration.

■ The first point urged upon review is that the evidence does not disclose serious or wilful misconduct. The charge is based on the alleged violation of certain general safety orders, being orders numbers 1121a, 1124c, 1125 and 1127a. These orders relate to the requirements for the construction of scaffolds.

Order number 1121a refers to a pole scaffold. A pole scaffold, according to this order, is one built alongside of and attached to the wall. In such a structure the uprights must be four feet six inches from the wall and parallel thereto. It requires putlocks, one end of which shall be attached to the wall and the other end to the pole scaffold. We are not here considering the pole scaffold.

Order number 1124c reads: "Scaffold shall not be overloaded. Material shall not be delivered nor be allowed to accumulate to such an extent as to subject the scaffold to a load which it is not intended to support." This order applies to the use of the structure rather than to its construction.

The power of the commission to establish safety orders is found in section 39 of the act, which reads: "The commission shall have power . . . to declare and prescribe what safety devices, safeguards or other means or methods of protection are well adapted to render the employees of every employment and place of employment safe as required by law or lawful order." This language is practically identical with a similar provision of the Wisconsin act. In *Saxe Operating Corp.* v. *Industrial Acc. Com.*, 197 Wis. 552 [222 N. W. 781], the commission had passed an order requiring in passenger elevators that, "the landing doors must be closed and locked before the car leaves the landing". It was sought in that case to have a penalty added to the award by reason of a violation of that order. The court in vacating an award for misconduct said:

"The order here in question does not deal with the erection, construction, or equipment of the physical plant

of the elevator, but with the element of negligence or want of ordinary care on the part of the elevator operator in failing to close the landing doors before starting the elevator.

"If the commission may subject the employer in this case to the 15 per cent. penalty by adopting the rule which prohibits this negligent starting of the elevator before the landing doors are closed, it may adopt orders which will cover the entire field of want of ordinary care on the part of employees, and thereby subject employers to this penalty in every case where any employee is injured through the negligence of a fellow employee. Such clearly is not the legislative intent. That intent was to subject the employer to the payment of compensation in all cases which came within the statute, regardless of the question of whether the injury was caused by want of ordinary care on the part of a fellow employee, and to impose this added compensation in the nature of a penalty where the employer has permitted his physical plant to be operated in such condition that it fails to comply with any statute of this state or any lawful order of the Industrial Commission. In the case of a physical plant, the employer is chargeable with notice of the conditions that prevail in the plant which generally remain fixed and unchanging. But he cannot know in advance of the conditions which may be produced by the negligent or inadvertent acts of his employees."

Furthermore, there is no testimony in this record as to what weight this particular scaffolding was intended to or did support. It also appears from the transcript that the scaffold did not collapse from the weight it bore, but rather due to a lack of balance caused by the applicant taking the load away from the two sides unevenly.

Order number 1125 refers to the dimensions to be used in particular types of scaffolding. This order refers to a scaffold more than thirty-two feet in height and to a "special adjustable" scaffold. In neither of these groups does this structure fall. Furthermore, the testimony shows that it was not the cross-braces that gave way in the structure in the present case, but rather the uprights which were of the dimensions prescribed by the order.

Order number 1127a has to do with the construction of horse scaffolds and the anchoring of the platforms. The

evidence here shows the fault was not in the horse structure but rather, if any, in the built-up support, and therefore this order is not applicable.

We therefore find no violation of any of the safety orders as set out in the rules of the commission.

█ Petitioner makes some contention that no proof was made of knowledge by petitioner of these orders, the record showing that the superintendent of construction for petitioner was asked, "Are you familiar with the general construction of the safety orders of the Industrial Accident Commission?" "Have you seen that book before?" "Have you read it?" The affirmative answer petitioner claims is only an admission of present knowledge of the orders, but it is apparent that the parties had in mind the period of time covered by the accident, and this ambiguity, if any, may well be resolved against the petitioner, as he had ample opportunity in the various hearings before the commission to deny knowledge of the orders if such were the case.

█ The next major point urged by petitioner for an annulment of the award is that the order of February 6, 1932, had become final and the commission had no authority to strike from that order the dismissal of the employer from liability and thereafter to entertain the supplemental application for serious and mental misconduct.

Section 20 (d) of the Workmen's Compensation Act provides, "The commission shall have continuing jurisdiction over all its orders, decisions and awards . . . and may at any time upon notice . . . rescind, alter or amend any such order, decision or award made by it *upon good cause appearing therefor*. Such power including the right to review, grant or regrant, diminish, increase or terminate . . . any compensation award upon the ground that the disability of the person in whose favor such award was made has either recurred, increased, diminished or terminated, provided that no award of compensation shall be rescinded, altered or amended after 245 weeks from the date of the injury."

The first requirement to be noted in section 20 (d) is the requirement which we have italicized, "upon good cause appearing therefor". The order discharging petitioner herein from liability was unconditional in its terms and neither in the subsequent pleading nor in the proof is any

showing made why the case should be reopened. In the case of *Bartlett Hayward Co.* v. *Industrial Acc. Com.*, 203 Cal. 522 [265 Pac. 195, 199], the court held: "What constitutes 'good cause' depends largely upon the circumstances of each case. The term is relative. It may be assumed that the determination of the commission as to what constitutes 'good cause', while entitled to great weight, would not be conclusive."

In a later case, *Western Pipe & Steel Co.* v. *Industrial Acc. Com.*, 126 Cal. App. 225 [14 Pac. (2d) 530], the granting of an application for a supplementary award on account of serious and wilful misconduct was upheld upon review on the ground that the petition and proof showed good cause therefor, to wit: a mistake of fact occasioned by the failure or inability of the employee to produce certain testimony at a prior hearing.

In *Hogeberg* v. *Industrial Acc. Com.*, 201 Cal. 169 [256 Pac. 413, 415], it is said: "There can be no question that the commission has no power to increase the original award by amended findings after its original findings and award has become final without new facts or a change in the condition of the applicant to support it."

In the case at bar, there being no showing of any cause whatsoever for the reopening of the case, we must hold the commission acted beyond its authority, for not only must facts be alleged and proved, but they must be such facts as would constitute good cause, to be so found by the commission in the first instance and subject to review by the courts as a final resort.

■ Petitioner also contends the claim for serious and wilful misconduct is barred by the statute of limitations. The accident happened on March 5, 1930, and the supplemental application for the penalty on account of serious and wilful misconduct was filed March 31, 1932, or approximately two years after the accident. On August 14, 1931, there became effective an amendment to section 11 (i), fixing a definite period of limitation of twelve months. Prior thereto if an original petition was filed in time claimant was allowed 245 weeks within which to institute proceedings on the ground of further disability. Under the rule reaffirmed in *Davis & McMillan* v. *Industrial Acc. Com.*, 198 Cal. 631 [246 Pac. 1046, 46 A. L. R. 1095], we

believe petitioner has filed in time and his petition is not barred by the statute.

For the reason that it does not appear from the evidence that there was any violation of the safety orders of the commission, and upon the further ground that no cause, good or otherwise, has been shown why the commission should rescind, alter or amend its original order made herein, the order finding petitioner guilty of serious and wilful misconduct is hereby annulled. Other points are suggested by petitioner, but the conclusions we have reached make it unnecessary to give this consideration.

Thompson, J., and Plummer, J., concurred.