[Civ. No. 21675. First Dist., Div. One. April 29, 1964.]

CASUALTY INSURANCE COMPANY OF CALIFORNIA et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and M. ROBERT FELTON, Respondents.

Hanna & Brophy, Warren L. Hanna and Griggs M. Ehlman for Petitioners.

Everett A. Corten and Rupert A. Pedrin for Respondents.

SULLIVAN, J.—The question to be determined here is whether an award by the Industrial Accident Commission of permanent disability indemnity based on a different occupation of the applicant than that agreed upon by the parties was in excess of the commission's jurisdiction and constituted a denial to the employer and its carrier, petitioners herein, of due process of law. We point out that the proceedings in controversy were properly and timely commenced pursuant to

and within the five-year period prescribed by Labor Code section 5410 and that the commission's determination was within its jurisdiction though made after the expiration of such period. We conclude nevertheless that the commission's action in rating the applicant on a different occupation than that agreed upon without affording petitioners an opportunity to offer evidence on the issue of occupation, was improper and denied them a fair hearing. We therefore annul the award.

We set forth the following chronology of the pertinent events: On *March 31, 1958,* M. Robert Felton, applicant below and respondent herein, sustained an industrial injury to his back while employed by petitioners John C. McEnery, Robert F. Benson and Alden French doing business as Farmers Union Hardware, hereafter referred to as Farmers. On *November 25, 1958,* Felton filed an application with respondent Industrial Accident Commission against Farmers and the latter's insurance carrier Casualty Insurance Company of California, also a petitioner herein, hereafter referred to as Casualty, seeking a determination of liability for temporary disability, medical treatment, medical costs and litigation expense but *not* of permanent disability. In said application, applicant alleged that at the time of his injury he was employed ''as a manager of hardware Dept.'' On *December 2, 1958,* Casualty filed its answer in letter form stating *inter alia* therein that '' [w]hen this matter comes on for hearing, we anticipate raising the following issues: (1) Injury. (2) Nature and extent of disability. (3) Need and liability for further medical treatment. (4) Age.''

On *December 11, 1958,* the matter came on for hearing, at which time it was admitted *inter alia* that on the date of the injury applicant was employed by Farmers *as department manager.* On *February 26, 1959,* a further hearing was held at Casualty's request in order to permit said carrier to cross-examine applicant's medical witness and introduce evidence in rebuttal to such witness' report. On *March 5, 1959,* the commission issued findings and award, determining among other things that the injury caused temporary partial disability and awarding applicant temporary disability indemnity, reimbursement for medical litigation expense and further medical treatment. Included among the findings of fact was the finding that applicant ''while employed as department manager'' by Farmers sustained the injury in question.

On *November 16, 1960,* applicant filed his petition for per-

manent disability rating. On *December 12, 1960,* Casualty filed its answer in letter form stating therein that "[w]hen this matter comes on for hearing, we anticipate raising the following issues: 1. Permanent disability. 2. Apportionment. 3. Need and liability for further medical treatment." The matter having been set for hearing on *January 6, 1961* was on that date, at the applicant's request, ordered off calendar subject to being reset at the request of either party. On such request of applicant's counsel, it was again set for hearing on *January 7, 1963.*

On the last date a hearing was held on the issues of (1) nature, extent and duration of disability and (2) need for further medical care. Testimony and medical evidence was thereupon introduced. It is the position of petitioners before us that no other issues were raised or considered.

On *March 25, 1963,* the rating bureau of the commission issued a recommended permanent disability rating of 66 per cent in response to a request describing applicant's occupation as "Department Manager" and submitting the following factor of disability: "Back disability limits applicant to sedentary work." On *March* 26, 1963, petitioners filed their objection to the above recommended rating and their request to cross-examine the rating specialist and submit rebuttal evidence. The matter was set for a hearing on *May 15, 1963.* However it is to be noted that on March 31, 1963, the five-year period (beginning with the date of injury) for the exercise by the commission of its continuing jurisdiction came to an end. (See Lab. Code, §§ 5410, 5803, 5804.) [1]

At the hearing on May 15, 1963, the rating specialist testified that he rated the disability on the factors of disability described above; that in accordance with the request for a rating he considered applicant as a "department manager" and placed him in occupational group 41; that all the classifications for manager normally came under group 41; and that "department manager" could be considered as similar to either "retail store manager or department or production manager." [2] The formula thus derived resulted in a decrease

[1] Unless otherwise indicated, all code references hereafter are to the Labor Code.

[2] The commission's Schedule for Rating Permanent Disabilities lists among others the following occupations under occupational group 41: Manager—any industry, not elsewhere classified; manager, floor—retail trade; manager, production—any industry; manager, retail store—retail trade.

of the standard disability rating of 70 per cent to 66 per cent.

The rating specialist further testified that a "hardware store clerk" would fall within occupational group 38; that if applicant performed the activities of such a clerk in his capacity as hardware store manager he would be classified in group 38; that group 41 in itself was primarily "one that is of light nature, regarding the keeping of records"; that presumably a retail clerk would be expected to do some sort of lifting similar to a sales clerk; and that if group 38 had been used, the resultant formula with an adjustment for applicant's age would have *increased* the standard disability rating. It is established that it would have been increased to 75 per cent.

Applicant thereupon moved to reopen on the issue of his occupation. The referee, noting that a finding of fact had been made on such issue,[3] nevertheless allowed the filing of a written motion with additional time to petitioners to file written objections thereto. *There were no further hearings noticed or held.*

On *May 15, 1963,* applicant filed his petition to vacate submission and reopen for the purpose of offering further testimony on the issue of occupation. In said petition, he contended that the commission's Schedule for Rating Permanent Disabilities did not list such an occupation as "Department Manager," that such schedule listed "Clerk, Sales, Retail Trade" assigning to it group number *35* which if inserted in the formula would produce a rating of 75 per cent, and that while applicant was nominally designated a "Department Manager" by his employer, his actual activities were those of a "Clerk, Sales, Retail Trade." Applicant requested that in the interest of justice and to remedy an excusable mistake "a brief further hearing be allowed on the point. . . ." On *June 14, 1963,* petitioners filed their answer to the above petition contending that the commission was without jurisdiction to alter or amend the finding as to applicant's occupation made on March 5, 1959, and that the granting of such petition would result in gross inequities to petitioners and a denial of due process of law.

On *August 16, 1963,* the commission *without ordering a*

---

[3]The referee remarked that on March 5, 1959, a finding had been made that applicant was employed as a department manager, that applicant had stipulated to such occupation and that "whether there is a stipulation or not is quite immaterial. there is a finding."

*further hearing or other proceedings* issued its findings and award based on a permanent disability rating of 75 per cent, awarding applicant permanent disability indemnity for 300 weeks and thereafter a life pension.[4] A petition for reconsideration filed by petitioners herein was denied.[5]

Petitioners contend before us that (1) the commission's action in granting applicant benefits based on a different occupation was in excess of its jurisdiction; and (2) such action, taken without granting petitioners an opportunity to litigate the issue of occupation constituted a denial of due process of law.

The gist of the argument advanced to support petitioners' first contention is this: The issue of applicant's occupation was disposed of by the finding made in the award of March 5, 1959. By its award of August 16, 1963, based on the increased permanent disability rating, the commission, while not expressly rescinding or amending its 1959 finding on occupation, effectually nullified it by implication. Although the 1963 award made no mention of applicant's petition to vacate and reopen, the award was tantamount to action on such petition. Since both the petition and the award were filed after the expiration of the five-year period, the commission lacked jurisdiction, so the argument runs, to rescind or amend the 1959 determination.[6]

An injured employee has the right "to institute proceed-

[4]The Memorandum of Referee on Decision filed August 1, 1963, states: "It would appear therefore that in modifying the proposed rating for occupation his duties, rather than just the title, be considered. Applicant's occupation may then be properly placed as being equivalent to a clerk and a Group 38 occupation, increasing applicant's proposed rating to 70% prior to modification for age. Applicant's age at the time of injury further modifies this rating to 75% and it will be found that applicant has sustained permanent disability of 75%, . . ."

[5]The Opinion and Order Denying Reconsideration states in pertinent part: "The Panel is of the opinion that applicant was actually engaged in performing duties of those identical to a store clerk, and such occupational classification is in a group which would produce a rating of 70% before modification for age. The Panel is of the further opinion that the stipulation of the parties that applicant was employed as a department manager has not been set aside or vacated. ... The Panel is of the further opinion . . . that the petition for permanent disability was timely filed and was an unresolved issue at the time of the issuance of the Findings and Award for temporary disability in 1959."

[6]It will be recalled that the five-year period expired March 31, 1963; the petition to reopen was filed May 31, 1963; and the award was filed August 16, 1963.

ings for the collection of compensation within five years after the date of the injury upon the ground that the original injury has caused new and further disability.'' (§ 5410.) The applicable statutes provide no definition of the term ''new and further disability'' as used in the above section.

■ ''It is only when there is a change in the condition of the original injury from a temporary to a permanent disability that a 'new and further disability' is established.'' (*Cowell L. & C. Co.* v. *Industrial Acc. Com.* (1930) 211 Cal. 154, 162 [294 P. 703, 72 A.L.R. 1118] ; in accord: *Associated Oil Co.* v. *Industrial Acc. Com.* (1931) 214 Cal. 358, 360 [5 P.2d 420] ; *Standard Oil Co.* v. *Industrial Acc. Com.* (1934) 137 Cal.App. 455, 458-459 [31 P.2d 457].) Thus as the court said in *Broadway-Locust Co.* v. *Industrial Acc. Com.* (1949) 92 Cal.App.2d 287, 290 [206 P.2d 856] : ''It has been held that where an award for temporary disability has been made or compensation voluntarily paid, permanent disability resulting from the injury is a new and further disability within the meaning of section 5410 and that the proceedings are governed by that section. (*Gobel* v. *Industrial Acc. Com.*, 1 Cal.2d 100 [33 P.2d 413] ; *Furness Pac., Ltd.* v. *Industrial Acc. Com.*, 74 Cal.App.2d 324 [168 P.2d 761] ; *Cowell L. & C. Co.* v. *Industrial Acc. Com.*, 211 Cal. 154 [294 P. 703, 72 A.L.R. 1118], and cases cited.)'' Where proceedings for an award based on a new and further disability in the nature of permanent disability are commenced within the five-year period prescribed by section 5410, the commission has the power to make a determination on such question after the expiration of such period. (*Gobel* v. *Industrial Acc. Com.* (1934) 1 Cal. 2d 100, 103-104 [33 P.2d 413] ; *Douglas Aircraft Co.* v. *Industrial Acc. Com.* (1948) 31 Cal.2d 853, 855 [193 P.2d 468] ; *Furness Pac., Ltd.* v. *Industrial Acc. Com.* (1946) 74 Cal. App.2d 324, 326 [168 P.2d 761] ; *Broadway-Locust Co.* v. *Industrial Acc. Com.*, supra, 92 Cal.App.2d 287, 295 [206 P.2d 856] ; *Westvaco etc. Corp.* v. *Industrial Acc. Com.* (1955) 136 Cal.App.2d 60, 64 [288 P.2d 300].)

■ The petition for permanent disability rating in the instant case was filed on November 16, 1960, and well within the five-year period. This properly invoked the jurisdiction of the commission on the issue of permanent disability and empowered the commission to continue its jurisdiction beyond the five-year period in order to make a determination thereon. The issuance of findings and award on August 16, 1963, was therefore not an act in excess of jurisdiction even though not accomplished until after the five-year period.

By the timely commencement of proceedings pursuant to section 5410, applicant sought a *new* award for a disability for which he had not previously received compensation. (*Furness Pac., Ltd.* v. *Industrial Acc. Com., supra.*) The commission whose jurisdiction was thus properly invoked on the issue of permanent disability was required, in its determination thereof, to consider all factors necessarily relevant to such issue. "In determining the percentages of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his age at the time of such injury, consideration being given to the diminished ability of such injured employee to compete in an open labor market." (§ 4660, subd. (a).) These factors were not required to be considered at the original hearing. The original application did not request a determination of permanent disability and it is beyond dispute that such issue was not before the commission at the original hearing. The only issues there raised were temporary disability, medical treatment, medical costs and litigation expenses. ■ On the issue of temporary disability, the relevant factor to be considered was actual wage loss, not the occupation of the injured employee. The findings and award issued March 5, 1959, were responsive to such issues. ■ While the finding of fact as to the occurrence of an industrial injury (Finding 1) was material and relevant on the issue of temporary disability, just as, for example, the finding of fact as to the applicant's average earnings (Finding 3) was material on such issue, that portion of Finding 1 stating that applicant was employed as department manager was neither relevant nor material to the issue.

A similar problem confronted the court in *American Can Co.* v. *Industrial Acc. Com.* [*Cacioppo*] (1961) 196 Cal.App. 2d 445 [16 Cal.Rptr. 424]. There the applicant, a millwright, sustained an injury and received an award for permanent disability, the commission finding that the injury caused no temporary disability. A year and a half later he sustained a second injury while working for the same employer as a sealer and stacker of cartons. The classification of a millwright was in a much higher occupational group in the commission's rating schedule than that of a sealer. Evidence was offered by both the applicant and the employer tending to explain the applicant's change of job assignment. The commission found that the applicant sustained the second injury on the date in question while employed

as a millwright and that the injury caused temporary total disability between specified dates and temporary partial disability thereafter. It awarded temporary disability payments accordingly. The court said: "Petitioner objects to the finding that applicant sustained the injury while employed as a millwright. The parties agree that whether petitioner be classified as a millwright or as a sealer was not and is not relevant or material in this proceeding. *Temporary disability indemnity is measured in terms of wage loss, which was the same regardless of whether he was working as a millwright or as a sealer.* (Lab. Code, §§ 4653, 4654.) In determining the percentages of permanent disability, account is taken of the nature of the physical injury, the occupation of the injured employee, and his age at the time of injury, consideration being given to the diminished ability of the injured employee to compete in an open labor market. (Labor Code, § 4660.) Inasmuch as a determination of the commission may be res judicata in all subsequent proceedings between the same parties or their privies (*Scott* v. *Industrial Acc. Com.*, 46 Cal.2d 76, 83 [293 P.2d 18]), if at a later date applicant is awarded permanent disability compensation based on the injury of October 19, 1960, the finding in question might affect the award. There is no question that applicant was working for petitioner at the time he was injured. A finding to that effect was all that was called for in this proceeding. *Whether he was working as a millwright or as a sealer was not a material issue and the finding that he was working as a millwright should not have been made.*" (P. 451; italics added.)

Petitioners claim that *Cacioppo* supports them and not respondents. This claim is predicated on the statement contained in the above quoted excerpt that "a determination of the commission *may* be res judicata in all subsequent proceedings ..." (italics added) in support of which the *Scott* case is cited. This does not warrant petitioners' conclusion that such determinations are necessarily and at all times res judicata nor does the *Scott* case so hold. ■ On the contrary the *Scott* case is consistent with the settled rule that since the commission proceeds judicially, its *final* decisions have res judicata effect. (*Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76, 83 [293 P.2d 18]; *French* v. *Rishell* (1953) 40 Cal.2d 477, 480 [254 P.2d 26]; *Goodman Bros.* v. *Superior Court* (1942) 51 Cal.App.2d 297, 301, 303 [124 P.2d 644]; *Solari* v. *Atlas-Universal Service, Inc.* (1963) 215 Cal.App.2d 587, 593 [30 Cal.Rptr. 407].) ■ However, as this court pointed out in *Solari, supra,* "in view of the

statutory power given to the Commission [under §§ 5803-5805] to rescind, alter or amend any order, decision or award within five years from the date of injury (excepting the limitation to reopen to find no employment) an order, decision, or award *is not final* until that period shall have expired. (*State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 73 Cal.App.2d 248, 253-254 [166 P.2d 310]; *Bartlett Hayward Co.* v. *Industrial Acc. Com.*, 203 Cal. 522 [265 P. 195]; *Pullman Co.* v. *Industrial Acc. Com.*, 28 Cal.2d 379 [170 P.2d 10]; see *DeCelle* v. *City of Alameda*, 186 Cal.App.2d 574, 578-579 [9 Cal.Rptr. 549].) ▮ The doctrine of res judicata is not applicable, therefore, to such orders, decisions, or awards during that five-year period. (*DeCelle* v. *City of Alameda, supra*, p. 579; 2 Witkin, Summary of Cal. Law, § 133, p. 1767; 1 Hanna, The Law of Employee Injuries and Workmen's Compensation, p. 82.)'' (Pp. 594-595.)

We think that the rationale of the *Cacioppo* case applies to the instant one and that in the corresponding finding on the applicant's injury in the case before us, all that the commission was called upon to find was that Felton was working for Farmers on the critical date. That portion of the finding relating to Felton's occupation was not material to the issue of temporary disability. ▮ It is a general principle of law that a finding as to facts not put in issue by the pleadings and submitted by the parties for decision is meaningless and should be disregarded as surplusage. (*Bohn* v. *Watson* (1954) 130 Cal.App.2d 24, 36-37 [278 P.2d 454]; *Hall* v. *Hickey* (1957) 156 Cal.App.2d 94, 101 [319 P.2d 33]; *Yost* v. *Hillcrest Motor Co.* (1963) 215 Cal.App.2d 108, 111 [29 Cal. Rptr. 906].) ▮ Thus when on the subsequent proceedings under section 5410 it was incumbent upon the commission to consider and take into account applicant's occupation so as to determine the percentage of permanent disability (§ 4660), it was in no way precluded or constrained by the ''finding'' as to occupation contained in the findings and award issued March 5, 1959. This finding was meaningless and hence no finding at all. The question of applicant's occupation was open.

Petitioners misconceive the posture of the case and the nature of the commission's action taken at the time of the findings and award of August 16, 1963. Contrary to petitioners' claim, such action was not taken upon a petition filed after the expiration of the five-year period to alter or amend a former award and thus in excess of the commission's juris-

diction which had not been timely invoked. Quite clearly the commission's action on August 16, 1963, was a finding and award of permanent disability, as the document itself discloses, made upon a petition for permanent disability timely filed within the five-year period. The argument made by petitioners that the commission granted a petition filed more than five years after the date of the injury is therefore completely untenable. Under the authorities discussed above, findings and award of August 16, 1963, were not in excess of the commission's jurisdiction.

Assuming *arguendo* that the finding of March 1959 as to applicant's occupation was not meaningless and surplusage, the commission's action in August 1963 did not offend any rule of res judicata. It is to be noted that the findings and award on the latter date did not contain any provisions expressly altering or amending the earlier finding. Petitioners concede this, as they must because, as we have pointed out, the subsequent proceedings sought a new award and not the amendment of a former one. Petitioners complain, however, that the earlier finding was repealed by implication. As we have explained, the earlier finding, assuming that it had validity, did not have the finality requisite for res judicata at any time within the five-year period. If the subsequent proceedings under section 5410 had the *effect* of nullifying the finding, this was a result properly effectuated by proceedings within the commission's jurisdiction.

 We therefore conclude that the commission's action in respect to the proceedings before it under section 5410 was not in excess of its jurisdiction. It remains for us to determine whether its consideration of the issue of applicant's occupation in the course of such proceedings constituted a denial of due process of law.

Applicant's petition filed pursuant to section 5410 was heard on January 7, 1963, on the issues of (1) nature, extent and duration of disability and (2) further medical care. At this hearing no evidence was received as to applicant's occupation at the time of the injury, a necessary element in the first issue as we have already explained. This undoubtedly resulted from the fact that at the beginning of the original hearing the parties in response to a preliminary statement by the referee stipulated that applicant was injured while employed as a department manager. The referee instructed the rating bureau to rate Felton as a "department manager." However, the commission's Schedule for Rating Permanent

Disabilities did not specifically list "department manager" among its occupational groups. As we have already pointed out, the following eventually occurred: The rating expert submitted a permanent rating based on the listed occupational group "retail store manager" (group 41). The commission, without receiving any evidence on occupation, based its award on the occupation of store clerk and placed him in occupational group 38. (See footnotes 4 and 5, *ante.*)

In *Industrial Indemnity Co.* v. *Industrial Acc. Com.* [*Hicks*] (1961) 57 Cal.2d 123 [17 Cal.Rptr. 821, 367 P.2d 413], the applicant sustained an industrial injury to his back while employed as a crane operator. After he returned to work, he was able to operate gantry cranes requiring only one foot for braking but not steam or diesel cranes which required the use of both feet. There was no evidence as to which type of crane he predominantly operated prior to his injury. At the hearing on the issue of permanent disability it was stipulated that applicant was an "operating engineer," a classification at that time included in the commission's list of employment categories. The referee instructed the rating bureau to rate Hicks as an operating engineer. In rating Hicks' disability, however, the rating expert used occupational group 47 (heavy equipment operator) rather than group 50 (gantry crane operator) or group 22 (operating engineer). If he had used either of the last two groups, the rating would have been lower. The referee issued findings and award based on the higher rating of heavy equipment operator. Industrial's petition for reconsideration based on a claim of error in the classification of Hicks' employment was granted but the commission although increasing the rating still based it on the same classification. The court annulled the award stating: "Although the commission was not bound to rate Hicks as an operating engineer, it was improper to apply a different classification without providing an opportunity for the presentation of evidence as to the proper classification. Such a procedure is even more important where, as here, the commission did not originate the change in classification, but allowed the rating expert to go beyond the statement submitted for rating and substitute a different classification. [Citation.] Industrial now suggests that Hicks was employed principally as a gantry crane operator, if not as an operating engineer. The commission's conclusion that there is sufficient evidence in the record to support its finding after reconsideration that Hicks was a heavy equipment

operator is in error. Further evidence should be taken to resolve the question of his actual occupation prior to the injury.'' (P. 126.)

We think that the principle announced in *Hicks* is controlling in the instant case. Here as in *Hicks* the parties agreed on the applicant's occupation and the referee gave instructions for a rating on it. Here as in *Hicks* the award was based on an occupational classification other than that agreed upon and instructed to be rated. No valid distinction can be found in the fact that here the occupational classification agreed upon is *not* listed, while in *Hicks* it *was* listed, in the commission's schedule. The important consideration is that the commission used a classification different from that originally described. In *Hicks* the commission itself had indicated such difference through different occupational group numbers. Here, although the original title of applicant's job was not specifically listed, the commission's schedule did list several occupations under the generic title of ''manager.'' Eschewing these, including listings of manager similar to the title agreed upon (see footnote 2, *ante*), the commission selected an occupational group under the generic title of ''clerk.'' Realistically viewed this involved the application of a different classification. ▉ As the court points out in *Hicks,* while the commission was not bound to rate the applicant according to the description of his occupation agreed upon, it was improper for it to apply a different classification without providing an opportunity to present evidence as to the proper classification.

In the instant case applicant requested such an opportunity. Ironically, it was these petitioners who resisted the request. However the basis of their objection was that the effect of any such evidence would be to alter or amend the earlier purported finding of occupation and any such proceeding would thereby be in excess of the commission's jurisdiction. We have shown this objection to be without merit and the issue of occupation to be properly before the commission in the proceedings under section 5410. On such proceedings the parties were in agreement as to the description of the applicant's occupation. Clearly petitioners' purpose in resisting the introduction of testimony on the issue of occupation was to insist that applicant be rated on the similar occupation of retail store manager. Since the commission decided that it would not, as it could not, be bound to rate applicant according to the agreed occupation, it was therefore incumbent upon it to provide for the litigation of the issue rather than

rate according to a different classification. Petitioners therefore had a right to a hearing on the issue and a determination of the issue without such a hearing resulted in a denial to them of due process of law.

Respondents claim that applicant testified as to his actual duties and activities, that the title of his job was not fully explanatory of the work he performed, that petitioners did not take issue with this testimony, and that the rating made was "clearly within the range of evidence." As petitioners correctly point out, the simple answer to the above claim is that the parties never regarded applicant's activities as being in issue. We conclude therefore that the commission should receive and the parties should have an opportunity to present further evidence as to applicant's proper occupational classification.

The award is annulled and the case is remanded to the Industrial Accident Commission with directions to take such further proceedings as may be necessary in accordance with this opinion.

Bray, P. J., and Molinari, J., concurred.