[L. A. No. 12455.   In Bank.—August 31, 1931.]

POSTAL TELEGRAPH CABLE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and JACK J. COEN, an Incompetent Minor, etc., Respondents.

Walter F. Haas, H. C. Johnson and Haas & Dunnigan for Petitioner.

Edward O. Allen, A. I. Townsend and John W. Carrigan for Respondents.

WASTE, C. J.—On rehearing we are satisfied with and reassert the views expressed in our former opinion filed December 27, 1930, except as to one point. On the question of the jurisdiction of the Industrial Accident Commission, after the two hundred and forty-five weeks of continuing jurisdiction had expired, to make the award of "further medical and hospital treatment as (the injured employee) may reasonably need from time to time", we have reached a different conclusion, as will presently be made to appear, from that first announced. As to all other matters, we adopt our former opinion, viz.:

"Jack J. Coen, a minor, suffered a fracture of the skull on July 16, 1924, while acting within the scope and course of his employment as a messenger for petitioner, the Postal Telegraph Cable Company. Three months later he returned

to his employment, and continued therein until June 1, 1926, receiving full wages during all of this period. On the latter date he left the employ of petitioner and engaged in other work. Application for adjustment of claim against petitioner was filed April 29, 1927, and the respondent Commission, after hearing, found that temporary total disability had been caused from July 16, 1924, the date of the injury, to September 21, 1924, and from April 28, 1927, continuing indefinitely thereafter. Based on this finding, an award of $8.55 a week was made in accordance with the provisions of the Workmen's Compensation Act (Stats. 1917, p. 831, and amendments thereto). Subsequently, and on March 7, 1929, pursuant to further petitions and hearings, the Commission filed its amended findings and award, whereby it was determined, upon competent evidence, that the injury had resulted in the mental derangement of the applicant causing permanent disability, the percentage being 100. The applicant was awarded $20.83 a week for 240 weeks, beginning July 24, 1924, which was eight days after the date of the accident, as required by section 9 (b) of the act (as amended by Stats. 1919, p. 914, § 4), and a pension thereafter at the rate of $12.82 a week for the remainder of his life. Credit was allowed for all payments theretofore made as disability compensation and attorney's fees, but was refused as to all payments of wages subsequent to the injury. The Commission filed its second amended findings and award on June 28, 1929, the amendments relating only to attorney's fees and to provisions for further medical and hospital treatment.

"The employer, being self-insured, seeks to have the award annulled and set aside, contending that credit should have been allowed to it for all wages paid to the applicant upon his return to work subsequent to the injury. Reference is made to section 21 of article XX of the Constitution and to section 1 of the Workmen's Compensation Act, *supra*, wherein it is provided that 'A complete system of workmen's compensation includes adequate provision . . . to the extent of relieving from the consequences of any injury or death incurred or sustained by workmen in the course of their employment.' Petitioner asserts that this language precludes the employee 'from the benefit of an award for 240 weeks following July 24, 1924, as during such period was in-

cluded a period from September 22d, 1924, until April of 1927, during which no consequences of the injury were sustained by the respondent Coen'. ▇ Concisely stated, the question confronting us is this: Is an employer entitled to credit against an award of compensation for wages earned by and paid to an employee subsequent to an industrial accident, which accident eventually leaves the employee permanently and totally disabled?

▇ "Section 9 (b) of the Workmen's Compensation Act provides that an injury to the brain resulting in incurable imbecility or insanity is conclusively presumed to be permanent and total in character for which the compensation shall be 'sixty-five per cent of the average weekly earnings for a period of two hundred forty weeks and thereafter forty per cent of such weekly earnings during the remainder of life'. The award in the present case was computed on this basis, and is, therefore, in strict accord with the letter of the statute.

"In our opinion it was not error for the respondent Commission to refuse to credit the employer with payment of wages made to the employee for services performed subsequent to the date of the injury. ▇ These payments were not made as disability compensation and were not intended as gratuities, but represented money earned by the employee. Primarily, the question is, has the workman's physical and mental efficiency been substantially impaired, and, if so, to what extent, and for what period of time will this impairment extend into the future? The statute is plain, and recovery is allowed for total disability because the employee is unfitted by his injury to follow any occupation. In *Burbage* v. *Lee*, 87 N. J. L. 36 [93 Atl. 859], it is held that 'the term "disability" is not restricted to such disability as impairs present earning power at the particular occupation, but embraces any loss of physical function which detracts from the former efficiency of the body or its members in the ordinary pursuits of life'. The injured employee in *Clark* v. *Kennebec Journal Co.*, 120 Me. 133 [113 Atl. 51, 52], lost the use of certain of his fingers by reason of an injury to the nerves of his arm, but he did not lose any time from his employment. The court there held: 'Nor does the fact that there has been no loss of wages afford an answer to the application. By the injury to his hand resulting in the per-

manent impairment of its usefulness the applicant has sustained a distinct loss of earning power in the near or not remote future.' Some of the decisions go farther. The following appears in *Williams* v. *Industrial Com.*, 303 Ill. 352 [135 N. E. 758, 759] : 'While the evidence shows that Paluch at the time of the hearing was earning more that he was earning at the time he was injured, it does not follow, as a proposition of law, that his capacity to earn has not been reduced. The statute does not require that there shall be a showing of loss of earning power before compensation can be made for a disfigurement and we are not authorized to read such a provision into the statute.' The ability of the workman to do the exact work for which he had been employed is not the sole measure of disability. (*Frankfort General Ins. Co.* v. *Pillsbury*, 173 Cal. 56, 58 [159 Pac. 150]. See, also, *Harvey* v. *Eldridge etc. Co.*, 128 Kan. 403 [278 Pac. 16, 17].) The United States Supreme Court in *New York etc. Ry. Co.* v. *Bianc*, 250 U. S. 596, 602 [63 L. Ed. 1161, 40 Sup. Ct. Rep. 44, 46], held it could not 'concede that impairment of earning power is the sole ground upon which compulsory compensation to injured workmen legitimately may be based . . . And we see no constitutional reason why a state may not, in ascertaining the amount of such compensation in particular cases, take into consideration any substantial physical impairment attributable to the injury, whether it immediately affects earning capacity or not.'

"In the case of *Mercury Aviation Co.* v. *Industrial Acc. Com.*, 186 Cal. 375, 377–379 [199 Pac. 508], the employee involved had been paid his regular wage for a period of time subsequent to his injury. Following his discharge by the employer, he filed an application for adjustment of claim, and the employer claimed credit for the payments made. It was claimed that as the employee did not in fact earn the full weekly payments received by him after the impairment to his arm, such sums, or at least some considerable portion thereof, were not paid in return for labor, but should be regarded as payments of compensation due under the Workmen's Compensation, Insurance and Safety Act. The court said: 'An employer cannot escape the payment of compensation for a permanent partial disability solely upon the ground that the employee returned to work prior to the termination of the period covered by the payments and for

the same wages received by him before the injury.' After
discussing subdivision g of section 11 of the Workmen's
Compensation Act, the opinion continues: 'Under the pro-
visions of section 11, subdivision "g", . . . where payments
have been made by the employer during the period of in-
capacity without any agreement between the parties as to
the application of the same, the commission may take the
voluntary payments into consideration to the extent that it
sees fit in fixing the amount of compensation, but the em-
ployer cannot complain if the commission declines to make
deductions on account of such payments. In the instant case
it is admitted that there was no express agreement that the
payments were made in discharge of any legal liability of
the employer. . . . Inasmuch as petitioner chose to continue
full payments during the period of total disability in the
absence of any agreement and, thereafter, to accept services
from the employee and make regular payments to him with-
out any understanding that the services rendered were not
worth the sums paid and that some portion thereof was paid
as compensation, it is not entitled as a matter of legal right
to insist upon the deduction of the payments from the
amount of the award. . . .

" 'The extent to which the payments should be considered,
if at all, was entirely in the discretion of the commission. It
was logical for the commission to deduct the amount of
compensation payable during the period of total disability
to offset the payments made by the employer when it re-
ceived no return whatever from the employee. There was
no abuse of discretion in the refusal of the commission to
credit the employer with the amount by which the payments
actually made during the period of total disability exceeded
the payments called for by the act, nor in refusing to make
any allowance for payments made after the employee re-
turned to work.'

"In the case of *De Zeng Standard Co.* v. *Pressey,* 86
N. J. L. 469 [92 Atl. 278, 279]; Id., 88 N. J. L. 382 [96 Atl.
1102], the principal question argued was whether the peti-
tioner should receive an award for the permanent impair-
ment of the function of his right arm, when it was shown
that he had been earning the same pay as he had earned
before the accident. The opinion states, in part: 'Next it
is argued that, because the petitioner worked for the prose-

cutor for 55 weeks at full wages, these 55 weeks should be deducted from the 60 weeks for which the award was made. The answer is that the prosecutor was under no obligation to employ the petitioner at $20 a week or any other sum, and that inasmuch as he chose to do so without any understanding, express or implied, that petitioner was not worth those wages, or that part of them should be treated as moneys paid under the compensation act, he must be presumed to have paid the money as wages and because he thought the petitioner was worth that amount. Indeed, it was optional with petitioner to continue working for the prosecutor, just as it was optional with the prosecutor to employ him, and, if the petitioner had chosen to do no work, he would have been entitled to his compensation under the act just the same. We see no force whatever in this argument.'

"We are of the view that it definitely appears from these cases, which indicate the trend of judicial decision, that the right to compensation is not lost or diminished by the injured employee's return to work at the same or a different wage than that theretofore earned by him. The statute does not require a showing of loss of earning power as a prerequisite to the payment of compensation for a permanent disability, but, on the contrary, provides for the payment in installments of a fixed and definite sum of money therefor. As stated in the early part of this opinion, mental derangement resulting from an industrial accident is conclusively presumed by section 9 (b) of the act to be permanent and total in character, for which the definite rate of compensation prescribed was properly applied by the Commission. The payments made to the employee subsequent to his injury, and for which the employer now seeks credit as against the award of compensation, were not intended nor accepted as disability compensation or gratuities, but represented wages for services performed. The authority of the Commission to refuse to allow credit therefor is beyond question.

"Petitioner attempts to distinguish the present case from the decisions above referred to on the ground that in each of the cited cases there was present immediately following the date of the injury, and at all times thereafter, including the subsequent period of employment, a total permanent disability of some kind or nature, for which the award was

later made. We cannot conceive of a more severe permanent disability than that resulting from a mental derangement which entirely unfits the person to follow the ordinary pursuits of life. The impairment of one's mental faculties certainly results in as great a detriment to the individual as the loss of feet or arms or fingers, even though the mental derangement does not follow immediately upon the happening of the accident.''

■ Section 20 of the Workmen's Compensation Act, after dealing with what the Commission shall do after final hearing, and what matters may be included in an award, provides in subdivision (d) that the Commission ''shall have continuing jurisdiction over all its orders, decisions and awards made and entered under (the general sections relating to compensation) and may at any time, upon notice, and after opportunity to be heard is given to the parties in interest, rescind, alter or amend any such order, decision or award made by it upon good cause appearing therefor, such power including the right to review, grant or regrant, diminish, increase or terminate, within the limits prescribed by (the) act, any compensation awarded, upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished or terminated; *provided,* that no award of compensation shall be rescinded, altered, or amended after two hundred forty-five weeks from the date of the injury . . . '' The order of June 28th, which directed the telegraph company to furnish the employee such further medical and hospital treatment as he may reasonably need in the future ''to cure and relieve him from the effects of said injury'', was made by the Commission more than two hundred and fifty-eight weeks subsequent to the date of the injury. While we cannot say whether or not the denial of the right of the Commission to make the questioned order in this case will work a hardship on the mentally incapacitated employee some time in the future, the legal question involved is of such importance by reason of its relation to the whole system of compensation for industrial injuries that we granted a rehearing for the sole purpose of examining into this particular phase of the present case.

The order of March 7th, which gave the applicant a permanent total disability rating, granted him a weekly com-

pensation for two hundred and forty weeks, and a pension at the rate of $12.82 per week for the rest of his life; but made no provision for future medical and hospital care. The employer petitioned for a rehearing, protesting against the compensatory features of the award. The applicant, in his answer to this petition, set out the facts establishing his lapses of speech and memory, and submitted that the award "should be amended to provide for such hospital and medical attention as his condition might require . . . in the future". The record discloses that both the petition and the answer were filed with the Commission within the two hundred and forty-five weeks' period, but were not acted upon by the Commission until after that period had expired.

The Commission relies upon language of this court in the case of *Bartlett Hayward Co. v. Industrial Acc. Com.,* 203 Cal. 522 [265 Pac. 195], where the court, referring to the enlargement of the powers of the Industrial Accident Commission, if exercised within the period of "continuing jurisdiction", brought about by the amendment to the Workmen's Compensation Act adopted by the legislature in 1917 (Stats. 1917, p. 831 et seq.), said (203 Cal. 537 [265 Pac. 195, 201]): " . . . placing within the discretion of the Commission the power to modify prior awards on equitable grounds is not uncommon". The Commission contends that the present case presents a case of "equitable grounds" which should clothe it with power to correct a mistake in an order made within the two hundred and forty-five weeks' period. Granting that there may be some plausibility in that theory under some appropriate procedure adapted to that end, we are not inclined to attach much weight to it in the present situation. But we are of the opinion that there is a theory upon which the action of the Commission in this case may yet be sustained.

The legislature is vested by the state Constitution with plenary powers, unlimited by the Constitution itself, to create and enforce a complete system of workmen's compensation by appropriate legislation. (Const., art. XX, sec. 21.) The legislature has done so, and one of the provisions of the Workmen's Compensation Act declares that whenever any of the provisions of the act are to be "interpreted by a court, it shall be liberally construed . . . with the purpose of extending the benefits of the act for the protection of

persons injured in the course of their employment''. (Workmen's Compensation Act, sec. 69a.) One of the purposes of the act is to make ''full provision for such medical, surgical, hospital, and other remedial treatment as is requisite to cure and relieve from the effects of (an) injury'' sustained by workmen in industry. (Const., *supra.*) An injured employee, although permanently disabled, is entitled to such medical and hospital treatment as may be reasonably required to relieve him from the effects of his injury. (*U. S. Fidelity etc. Co.* v. *Department of Industrial Relations*, 207 Cal. 144, 152 et seq. [277 Pac. 492].) Consequently, in making the order here questioned, the Commission was within its jurisdiction as to the subject matter, and, under the rule announced in the U. S. Fidelity case, just cited, we are of the view that it may be regarded merely as an order intended to make fully effective the award previously made. If we are correct in this view, the Commission was acting wholly within its powers, for, by section 63(a) of the Workmen's Compensation Act, it is ''vested with full power, authority and jurisdiction to do and perform any and all things, whether (therein) specifically designated, or in addition thereto, which are necessary or convenient in the exercise of any power, authority or jurisdiction conferred upon it under (the) act''.

The question of medical and hospital treatment appears, from the record of this case of serious injury to the employee, to have been constantly in the minds of the parties and of the Industrial Accident Commission and its referees who conducted the various hearings. Following the making of the first order and award in the case, in which the previously incurred and future medical treatment for the employee was held to be necessary, there were supplemental hearings for the purpose of determining whether or not the employee was permanently injured, and to determine the extent to which he would require future medical treatment and hospital care. The diagnosis or finding of the Commission in the so-called final award, that the injury to the employee ''caused permanent disability consisting of psychoneurosia, psychasthenia, hysterical anaesthesia, and periods of amnesia'', would seem to convey to one of common knowledge that a patient in that condition would not only be apt to need medical treatment and hospital care in the

554

future, but would, in all likelihood, be certain to require it. The reasoning in the U. S. Fidelity case, *supra,* seems to persuasively apply to the facts now under consideration. If, as seems quite probable, the failure to carry into the order of March 7, 1929, the finding and provision for the future medical treatment for the employee, which was under consideration all the time the Commission had continuing jurisdiction, was caused by inadvertence and mistake, that fact was "good cause" and a sufficient ground upon which to grant the rehearing of the order. (*Standard etc. Co.* v. *Industrial Acc. Com.,* 208 Cal. 532, 536 [282 Pac. 948].)

The award, including the order of June 28, 1929, is affirmed.

Curtis, J., Richards, J., Preston, J., Seawell, J., and Shenk, J., concurred.