[L. A. No. 22103.   In Bank.   Mar. 18, 1952.]

AETNA LIFE INSURANCE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, LEO V. NOWAK et al., Respondents.

Gibson, Dunn & Crutcher, Sherman Welpton, Jr., Herlihy & Herlihy and M. A. Cornell, Jr., for Petitioner.

Sidney L. Weinstock as Amicus Curiae on behalf of Petitioner.

Edmund J. Thomas, Jr., T. Groezinger and Thomas L. Higbee for Respondents.

SCHAUER, J.—Aetna Life Insurance Company seeks review of an order of the Industrial Accident Commission which denies Aetna's claim of lien against $2,400 payable to Leo V. Nowak, an employe of Consolidated Vultee Aircraft Corporation, under a compromise agreement between the employe and American Motorists Insurance Company, the workmen's compensation insurance carrier of Vultee.

Petitioner contends, in effect, that the Industrial Accident Commission has failed in this case to give effect to the legislative intention, declared in the Workmen's Compensation Act (Lab. Code, § 4903, par. (f)) and the Unemployment Insurance Act (3 Deering's Gen. Laws, Act 8780d, § 207) and emphasized by this court in *Bryant* v. *Industrial Acc. Com.* (1951), 37 Cal.2d 215 [231 P.2d 32], that a disabled workman is not entitled to unemployment compensation disability benefits for a period of unemployment caused by a disability for which he is entitled to workmen's compensation. The record sustains this contention and the order of the commission must be annulled.

It was held in the Bryant case that, to make the declared intent effective, the Industrial Accident Commission, pursuant to paragraph (f) of section 4903 of the Labor Code, must allow a lien "against any amount to be paid as [workmen's] compensation" for the "amount of unemployment compensation disability benefits which have been paid under or pursuant to the Unemployment Insurance Act in those cases where, pending a determination under [the workmen's compensation law] . . ., there was uncertainty whether such benefits were payable under that act or payable [under the workmen's compensation law]."

In the present case the Industrial Accident Commission contends that the lien cannot or should not attach to the amount payable under the compromise because that sum is not an "amount to be paid as [workmen's] compensation." This contention is untenable. The compromise payment comes

within the definitions of "compensation" as enunciated in sections 3207 and 5001 of the Labor Code. (See footnotes 2 and 3, *infra*, p. 604.) To sustain the contention would not only derogate the statute but would permit the Industrial Accident Commission to adopt and effectuate a policy sharply contrary to that which has been clearly declared by the Legislature and which has been expressly upheld by this court. (*Bryant* v. *Industrial Acc. Com.* (1951), *supra*, 37 Cal. 2d 215.)

The history of this proceeding is as follows: Nowak, the employe, was unable to work for several months because of a disabled back. He claimed that his disability was the result of an industrial injury and filed his application for adjustment of claim with the Industrial Accident Commission. American Motorists Insurance Company, the workmen's compensation insurance carrier, denied liability.

Aetna, during the period in question, was the insurer of Vultee, the employer, under a voluntary plan for the payment of unemployment compensation disability benefits and other benefits, including medical expenses, where an employe became unable to work because of a nonindustrial injury. This plan was adopted pursuant to the Unemployment Insurance Act (3 Deering's Gen. Laws, Act 8780d, art. 10, pt. 6). Aetna paid $1,256.05 unemployment disability benefits, other benefits which were used for living expenses, and medical expenses. It filed its claim of lien for the amount of these payments with the Industrial Accident Commission in the proceeding brought by Nowak against American Motorists Insurance Company. On this claim Nowak endorsed the following: "I consent to the requested allowance of a lien against my compensation."

Nowak and American Motorists negotiated a compromise of their controversy as to whether Nowak was entitled to workmen's compensation. Their agreement recites, as the reason for compromise, that "grave dispute exists as to whether there was an injury arising out of and in course of the employment, and if so, whether said injury resulted in the condition of which applicant complains. There is also dispute as to whether there is resultant permanent disability. The parties seek to avoid the hazards of further litigation." They "agree to settle any and all claims on account of said injury by the payment of . . . $2,400.00 . . . in one lump sum, less attorney's fees as set by the Commission." The compromise agreement does not mention Aetna's claim of lien.

Shortly after the compromise was presented to the Industrial Accident Commission for approval, the employe's attorney wrote to the Industrial Accident Commission stating that the employe and the workmen's compensation insurance carrier "contemplated that the lien of Aetna Life Ins. Co. would not be observed. For that reason, the reason for the Compromise and Release was specifically framed so that it went only to resolvement of the issue of injury and to the issue of permanent disability''; that ''Aetna has merely paid what is its true share considering the fact that applicant's condition may have been wholly or partially non-industrial.'' A copy of this letter was sent to Aetna. Aetna then wrote to the Industrial Accident Commission stating, ''We believe that the only reason for the proposed compromise is an effort on the part of the applicant to retain the $1,200 admittedly paid to him by the Aetna Life Insurance Company and an effort on the defendant's part to help him retain it, thereby saving them the payment of an equal amount in order to effect compromise. The issue of the Aetna Life Insurance Company's lien is before the commission and we do not believe the applicant and the defendant have a legal right to in effect destroy our statutory lien by agreement simply by stating that the compromise does not intend to dispose of certain issues.'' Aetna's letter requested a further hearing. Such hearing was had. Aetna established that it had paid $1,256.05 in medical expenses and weekly payments which the employe used for living expenses and that its policy did not cover industrial injuries.

At that hearing (and in its petition for rehearing) Aetna directed the referee's attention to the opinion of the District Court of Appeal in *Bryant* v. *Industrial Acc. Com.* (1950), reported at (Cal.App.) 224 P.2d 444. This is the Bryant case in which we granted a hearing and the final opinion in which is reported at 37 Cal.2d 215 [231 P.2d 32]. While the Bryant case was pending in this court the Industrial Accident Commission made the order here attacked; it approved the compromise and ordered that Aetna's claimed lien be denied and that Aetna be dismissed from the proceeding.

The Industrial Accident Commission takes the position that an essential basis for application of paragraph (f) of section 4903 of the Labor Code and the principles enunciated in the Bryant case is the determination by that commission that the disabling injury was sustained in circumstances which entitle the disabled employe to workmen's compensation dur-

ing a period for which he has received unemployment compensation disability benefits, and that, for the benefit of the injured workman, it can leave open the question whether his injury was industrial, and that a person in the position of Aetna, who has advanced disability payments prior to determination of the issue, has no right to have the issue determined. The commission says that under general Industrial Accident Commission policy and specific rule[1] it would not leave open the question of the industrial character of the injury and would not approve a compromise such as the one here unless there was doubt that the workman could establish that he was entitled to workmen's compensation. In support of this argument the Industrial Accident Commission refers to evidence, received at an intermediate hearing before it, which tends to show that the workman's disability had no connection with his employment. If the question had been litigated, it says, the workman might well have been awarded nothing and Aetna would then have received nothing because there would have been neither a right to reimbursement nor a fund upon which to claim a lien. However, in that event, the issue in which Aetna is interested would have been both heard and determined.

Aetna urges that the Industrial Accident Commission should be required to decide whether the injury was industrial, because the procedure adopted here—refusal to determine the issue and dismissal of Aetna—is tantamount to refusal to hear and could result in the perpetration of a fraud on it as a result of collusion between the employe and the workmen's compensation insurance carrier, the perpetration of which would be aided by such procedure of the Industrial Accident Commission. Furthermore, Aetna asserts, if the procedure here followed by the commission is upheld, carriers such as Aetna inevitably will refuse to pay claimed unemployment compensation disability benefits promptly and, necessarily for the proper handling of their business under those circumstances, will await final decision by the Industrial Accident Commission as to whether the injury is industrial. There is merit in both contentions. Without even considering the

[1]Section 10890, title 8, of the California Administrative Code reads, "Agreements which provide for the payment of less than the full amount of compensation due or to become due, and which undertake to release the employer from all future liability, will be approved only where it appears that a reasonable doubt exists as to the rights of the parties or that approval would be for the best interest of the parties."

basic legal implications of the first, the latter contention is impelling.

■ Obviously it is to the benefit of disabled workmen and in full accord with the salutary public policy of the relevant statutes that such workmen receive prompt payment pending determination of the cause of their disability. The Workmen's Compensation Law and the Unemployment Insurance Act should not be construed together in a manner which not only would defeat directly one legislative intent (to avoid overlapping or duplicating payments) but which also would tend to defeat a substantial purpose by discouraging the prompt payment of benefits under the Unemployment Insurance Act where there is a question whether benefits are payable under the compensation law. To the contrary see section 3202 of the Labor Code: The provisions of the Workmen's Compensation Law "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." And, as this court pointed out in *California Emp. Com.* v. *Los Angeles Etc. News Corp.* (1944), 24 Cal.2d 421, 427 [150 P.2d 186], the Unemployment Insurance Act "is a remedial statute and as such must be liberally construed for the purpose of accomplishing its objects."

■ As stated above, there is no merit to the contention of the Industrial Accident Commission that the amount to be paid under the compromise agreement is not "compensation." The payment clearly comes within the general definition of "compensation" in the Workmen's Compensation Law[2] and the definition thereof in the chapter of that law which concerns compromise and release.[3]

Both parties have cited *Hawthorn* v. *Industrial Acc. Com.* (1951), 101 Cal.App.2d 568, 572 [225 P.2d 966]. That case, however, is not determinative of the issue in the present case. Hawthorn, a city fireman and a member of the State Employees' Retirement System, was injured in line of duty. Under special provisions of the Labor Code which apply to

---

[2]Section 3207 of the Labor Code provides, " 'Compensation' means compensation under Division IV [the Workmen's Compensation Law] and includes every benefit or payment conferred by Division IV upon an injured employee, or in the event of his death, upon his dependents, without regard to negligence."

[3]Section 5001 of the Labor Code provides, "Compensation is the measure of the responsibility which the employer has assumed for injuries or deaths which occur to employees in his employment when subject to this division. No release of liability or compromise agreement is valid unless it is approved by the commission."

firemen so injured (div. IV, pt. 2, ch. 2, art. 7) Hawthorn was entitled to leave of absence without loss of salary in lieu of temporary disability workmen's compensation (Lab. Code, § 4850), and the Industrial Accident Commission was required, at the request of the city or the retirement system, to determine whether the disability was incurred in line of duty (Lab. Code, § 4851). The only holding of the Hawthorn case is that the commission had neither duty nor power to award leave of absence and salary. Its closest approach to relevancy here lies in the suggestion that the commission's "only responsibility is to determine upon request whether the disability claimed arose out of and in the course of the employment." In that case, however, the city and the retirement system, which could require the commission to determine whether the fireman's disability arose out of and in the course of employment, were not parties in interest claiming a lien as is Aetna, the one who is entitled to require the commission to make a similar determination as to the employe here.

We conclude that if the parties, including Aetna, cannot work out an agreement which effects a settlement of Aetna's claim, then the Industrial Accident Commission should determine the period of disability for which the employe is entitled to compensation and allow the claimed lien for the amounts of unemployment disability benefits paid during that period.

For the reasons above stated, the order is annulled and the cause is remanded to the Industrial Accident Commission for further proceedings in accord with this opinion.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I reaffirm the views expressed in my dissent in *Bryant* v. *Industrial Acc. Com.*, 37 Cal.2d 215, 223 [231 P.2d 32]. There are features about this case, however, which necessitate additional discussion.

The majority holds that a lien for unemployment disability payments made to an applicant for workmen's compensation must be allowed against a lump sum award made as the result of a compromise.

The Unemployment Insurance Act (Stats. 1935, p. 1226, as amended, § 207) provides that a person shall be entitled to

disability payments thereunder unless he has received or is *entitled* to receive compensation under the workmen's compensation laws. In the instant case there has never been a showing that Nowak, the employe, was entitled to compensation. He received a lump sum by way of a compromise agreement between him and his employer's insurance carrier. To reach the result that such sum is compensation, and thus subject to a lien for disability payments, the majority reasons that if the lien is not allowed, the insurer covering the liability for disability payments will not make them promptly but will withhold them to see if workmen's compensation is awarded, and, therefore, the liberal application of the workmen's compensation laws would thus be thwarted. There can be no doubt that petitioner was required by law to make the disability payments whether or not an award of workmen's compensation was made in the applicant's favor. It is strange reasoning indeed which supposes a "probable" failure to comply with the law as a reason for interpreting a statute favorable to the prospective law violator. The presumption is to the contrary. A person is presumed to be innocent of wrong and that the law has been and will be obeyed. (Code Civ. Proc., § 1963 [1, 33].) Hence, we will not suppose that the requirement that disability payments be made will be wilfully disobeyed.

This is the first case which has come to my attention in which the author of the majority opinion has relied upon section 3202 of the Labor Code as a basis for the interpretation of the provisions of that code or the workmen's compensation law, and then such reliance is for the purpose of denying the benefits of the law to persons injured in the course of their employment. This is indeed using the mandate of liberal construction for its own destruction. A definition of liberal construction may be found in my dissenting opinion in *California Shipbuilding Corp.* v. *Industrial Acc. Com.*, 31 Cal.2d 270, 288, 289 [188 P.2d 27].

There is another factor of compelling importance. The effect of the majority's interpretation is that there must be a determination of whether compensation is payable in every case, and, therefore, the provision for compromising compensation claims becomes ineffective, and might just as well be stricken from the statute. There can be no compromise, because, if it must be decided whether the injury is compensable in all cases, and hence a lien attaches, there is nothing to compromise. The statute says that nothing therein (and

that includes the allowance of a lien for disability payments) shall prevent a compromise. It reads: "No contract, rule, or regulation shall exempt the employer from liability for the compensation fixed by this division, but nothing in this *division* shall: (a) . . . *Impair the right of the parties interested to compromise,* subject to the provisions herein contained, any liability which is claimed to exist under this division on account of injury or death." (Italics added.) (Lab. Code, § 5000.) "Compensation is the measure of the responsibility which the employer has assumed for injuries or deaths which occur to employees in his employment when subject to this division. No release of liability or compromise agreement is valid unless it provides for the payment of full compensation in accordance with this division or unless approved by the commission." (Lab. Code, § 5001.) If when a lien is filed against a compromise award the commission must decide whether the injury is compensable, the extent of the disability and the amount of compensation, the compromise is nullified because it is based on a dispute as to those factors. It is clear, therefore, that the right to compromise is not only impaired in direct violation by section 5000, it is completely destroyed.

Even conceding the soundness of the majority holding in the Bryant case, which I do not, it should not be extended to a case such as this where the only award made in favor of the injured employee is by way of a compromise on the issue of liability. This should be apparent when we consider the desirability from the standpoint of the injured employee of compromising cases of doubtful liability. Such cases, if not compromised, are generally taken into court which results in delay and expense to both parties, and often the defeat of applicant's claim. The Legislature, therefore, wisely provided for a compromise, believing it to be to the best interests of the applicant in doubtful cases of liability. In fact a compromise is often reached where the agreement expressly provides that it does not constitute an admission of liability by the defendant-employer. Generally, in such cases the applicant agrees to accept much less than the amount of his claim. Such being the case it is apparent that if a lien is permitted for unemployment disability payments against the amount agreed upon by way of compromise, the incentive to compromise will be greatly minimized and many injured employees will be deprived of the benefits of this remedial statute enacted for their protection. If, as the majority says,

the Unemployment Insurance Act and the Workmen's Compensation Act should be construed together as remedial statutes, and as such, must be liberally construed for the purpose of accomplishing their objects, it seems clear that such a construction of the two acts would lead to a holding that the lien provision of the former act would not apply to an award based upon a compromise of liability for the injury for which disability payments were made. Considerations of public policy should dictate that it is of far greater importance, particularly in advancing the social and economic welfare of injured workingmen, to compromise and settle disputed claims for workmen's compensation, than to permit a few carriers of unemployment disability insurance to recoup their unemployment disability payments from the amount of an award based upon a compromise and thus destroy the incentive to compromise such claims.

Finally, it should be pointed out that even if the majority's interpretation is correct, the claimant of the lien for disability payments had the burden of establishing the validity of its lien which necessarily required it to establish that Nowak's injury was compensable, the extent of the disability and the amount of compensation payable. That is true because it is not entitled to the lien unless the award was payable under the workmen's compensation laws. It has failed to meet this burden, as it offered no evidence on the subject.

I would, therefore, affirm the order of the commission denying petitioner's lien.

Respondent's (I.A.C.) petition for a rehearing was denied April 14, 1952. Carter, J., was of the opinion that the petition should be granted.