[S. F. No. 19019.   In Bank.   Apr. 22, 1955.]

GEORGE SMITH, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Julius M. Keller for Petitioner.

Edmund G. Brown, Attorney General, Gerald A. Carrera, Deputy Attorney General, Everett A. Corten and T. Groezinger for Respondents.

SCHAUER, J.—George Smith, an applicant for workmen's compensation, seeks review and annulment of an order of the Industrial Accident Commission that he take nothing by reason of a claim against the Subsequent Injuries Fund. Whether Smith is entitled to compensation from such fund depends upon the meaning of section 4751 of the Labor Code, hereinafter summarized. We have concluded that the section can and should be liberally interpreted in favor of the applicant to give him the relief which he seeks.

In earlier litigation (*Subsequent Injuries Fund* v. *Industrial Acc. Com.* (1952), 39 Cal.2d 83, 86, 91 [244 P.2d 889]) we considered the general plan and objectives of the subsequent injuries legislation and held that it is encompassed within the purview of the "complete system of workmen's compensation" which is authorized by the state Constitution (art. XX, § 21) and which various statutes, particularly, in this connection, division IV of the Labor Code (§§ 3201-6002, which include the subsequent injuries plan), are intended "to make effective" (Lab. Code, § 3201). "The provisions of Division IV . . . shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (Lab. Code, § 3202.)

The subsequent injuries plan provides as follows: An employer of a workman who has a permanent physical impairment and who thereafter sustains a compensable injury resulting in permanent disability, is not liable for compensation for the ensuing combined disabilities, but only for that portion of permanent disability which is caused by the last injury. (Lab. Code, § 4750.) "If an employee who is permanently *partially* disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect

of the last injury and the previous disability or impairment is a permanent disability equal to 70 per cent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury, compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article [art. 5, entitled 'Subsequent Injuries Payments']." (Lab. Code, § 4751; italics added.)

The special additional compensation last mentioned is paid from "funds appropriated for such purpose" (Lab. Code, § 4754); thus the taxpayers as a whole, rather than the employer of the already handicapped worker, pay additional compensation to the worker if he sustains an industrial injury which causes increased permanent disability coming within the limits defined.

In terms the subsequent injuries plan applies only to an employe whose previous disability is *partial*. The Industrial Accident Commission takes the position that " 'permanently *partially* disabled,' as used in Labor Code Section 4751, can be interpreted only as meaning having disability which is ratable at less than 100%." The applicant urges that an employe who, prior to sustaining a subsequent injury, has a disability rating of 100 per cent may nevertheless (when in fact he is performing services for which he is receiving compensation) be eligible for subsequent injury compensation. In other words, the commission is of the view that by the language of the statute it is precluded, insofar as applying the Subsequent Injuries Fund provisions is concerned, from treating as partially disabled an employe who has been rated as totally disabled for the purpose of workmen's compensation payments while, on the other hand, the petitioner urges that a rating of total disability for workmen's compensation purposes is neither synonymous with the fact of actual total disability nor, in view of the objectives of the legislation, does it preclude payments from the Subsequent Injuries Fund to an employe who, although already rated totally disabled for workmen's compensation allowances, has actually been gainfully employed and suffered further disabling injury in such subsequent work.

Smith sustained the industrial injury which gave rise to this proceeding on August 14, 1952. As a result of this injury he lost part of the little finger of his right hand. This disability, considered alone, received a permanent disability rating of 5¼ per cent.

On June 6, 1949, Smith, who was then employed as a long-shoreman, had sustained an industrial injury to his left arm and shoulder which received a permanent disability rating of 38½ per cent. Before he sustained the 1949 injury Smith suffered from swelling of the right hand. This condition, the result of arthritis, has grown worse and now affects both arms and hands and the left leg. After being injured on June 6, 1949, Smith was unable to return to work until July, 1951. Since then he has worked as a sweeper on the docks. This work is less demanding physically and does not pay as much as that of longshoreman. Smith did not work every day as a sweeper, sometimes because work was not available and sometimes because he could not work due to his physical condition. The Permanent Disability Rating Bureau concluded that Smith's disability immediately prior to his injury of August 14, 1952, would be ratable at 100 per cent.

The employe contends, in effect, that the determination that he had a prior 100 per cent ratable disability is untenable in the light of the undisputed evidence that he was working and earning wages. This contention, in the form in which it is stated, is incorrect. ■ It is settled law in this state that an employe may receive a permanent disability rating of 100 per cent and be entitled to the disability payments incident to such rating although he is able to return to work at the wages he received before the injury which caused disability. ■ ''[T]he right to compensation is not lost or diminished by the injured employee's return to work at the same or a different wage than that theretofore earned by him. The statute does not require a showing of loss of earning power as a prerequisite to the payment of compensation for a permanent disability, but, on the contrary, provides for the payment in installments of a fixed and definite sum of money therefor.'' (*Postal Tel.-Cable Co.* v. *Industrial Acc. Com.* (1931), 213 Cal. 544, 550 [3 P.2d 6]; see also *Frankfort General Ins. Co.* v. *Pillsbury* (1916), 173 Cal. 56, 58 [159 P. 150]; *Mercury Aviation Co.* v. *Industrial Acc. Com.* (1921), 186 Cal. 375, 377 [199 P. 508]; *Department of Motor Vehicles* v. *Industrial Acc. Com.* (1939), 14 Cal.2d 189, 191, 194 [93 P.2d 131].) We conclude, nevertheless, for the reasons hereinafter explained, that it is permissible and desirable to distinguish between a formula or rule-established ''100 per cent disability'' for certain rating pur-

poses, and actual total disability insofar as productive work or compensated employment is concerned.

The phrase "permanently partially disabled" is not defined in the Labor Code and does not appear elsewhere in that code than in section 4751. However, the phrase is in common use in connection with workmen's compensation. (See 58 Am.Jur., Workmen's Compensation, § 283 ["Disability benefits are ordinarily graded on the basis of the character of the disability as partial or total, and as temporary or permanent"] ; 2 Schneider, Workmen's Compensation Law (1932), pp. 1332-1333, § 400 ["There are four designated classes of disability for which compensation is payable. They are permanent total, permanent partial, temporary total and temporary partial"].) The California cases, without discussion of the meaning of the phrase "permanent partial disability," have used it to refer to disability rated at less than 100 per cent. (*Massachusetts etc. Ins. Co.* v. *Pillsbury* (1915), 170 Cal. 767, 768 [151 P. 419] ; *Frankfort General Ins. Co.* v. *Pillsbury* (1916), *supra,* 173 Cal. 56, 57 ; *Mercury Aviation Co.* v. *Industrial Acc. Com.* (1921), *supra,* 186 Cal. 375, 377 ; *Baroni* v. *Rosenberg* (1930), 209 Cal. 4, 6 [284 P. 1111].)

The employe urges that although permanent partial disability has been accepted in other contexts as meaning disability rated at less than 100 per cent, the Legislature must have intended that so far as section 4751 is concerned "as long as one is able to be employed and in a position to become injured, he is within the contemplation of the statute, and 'partially disabled.' " According to the employe, under the commission's interpretation of section 4751 "the most worthy cases" would not be entitled to subsequent injury compensation ; for example, such compensation could not be awarded to the blind employe, since section 4662 of the Labor Code provides that blindness is "conclusively presumed" to be a total disability, or to the employe who has severe impairment of the functions of the neck, since the commission's schedule for rating permanent disabilities lists such impairment as a 100 per cent disability.

The following example suggested by the employe illustrates the apparent injustice of a strict interpretation of section 4751: An employe, such as the applicant here, who has prior permanent disability rated at 100 per cent but who is gainfully employed sustains an industrial injury causing permanent disability rated at $5\frac{1}{4}$ per cent; the combined effect

of the last injury and the previous disability is a permanent disability rated at 100 per cent; the employe is entitled to receive 5¼ per cent disability payments from his employer and nothing from the Subsequent Injuries Fund. An employe who has a prior permanent disability rated at 99 per cent sustains an industrial injury causing permanent disability rated at 5¼ per cent; the combined effect of the last injury and the previous disability is a permanent disability rated at 100 per cent; he is entitled to receive 5¼ per cent disability payments from his employer and 94¾ per cent disability payments from the Subsequent Injuries Fund.

On the other hand, it could be argued with considerable plausibility, although we do not imply that we would so hold, that the employe's interpretation of section 4751 might lead to the following inequable situation: A workman, though he has a permanent disability rating of 100 per cent, is able to continue earning wages. He sustains a series of industrial injuries, each of which results in a permanent disability rating of 10 per cent but none of which actually incapacitates him. On the occasion of each such injury he will be entitled not only to 10 per cent permanent disability payments from his employer but also to 90 per cent permanent disability payments from the Subsequent Injuries Fund. The latter payments are 65 per cent of his average weekly earnings for 360 weeks and 30 per cent of his average weekly earnings for the remainder of his life (Lab. Code, § 4658). It may be doubted that the Legislature contemplated that the Subsequent Injuries Fund would have to bear the burden of paying one employe not one but several weekly permanent disability payments throughout his life.[1]

These hypothetical examples of themselves do not impel a conclusion in accord with or contrary to the employe's argument. They probably indicate that the subsequent injuries legislation was drafted without any actual legislative intent as to, or thought of, a situation such as that presented by

---

[1]As discussed in cases concerning other phases of remedial legislation for disabled workers, the intention of the Legislature to provide a comprehensive system of benefits, but not duplicating compensations, for individuals who are unemployed because of either illness or injury, whether industrially caused or otherwise, is clearly expressed in the enactments there pertinent. (See *Bryant* v. *Industrial Acc. Com.* (1951), 37 Cal.2d 215, 218 [231 P.2d 32]; *Aetna Life Ins. Co.* v. *Industrial Acc. Com.* (1952), 38 Cal.2d 599, 604 [241 P.2d 530]; *Garcia* v. *Industrial Acc. Com.* (1953), 41 Cal.2d 689, 692-693 [263 P.2d 8]; *California Comp. Ins. Co.* v. *Industrial Acc. Com.* (1954), 128 Cal.App.2d 797, 806-807 [276 P.2d 148, 277 P.2d 442].)

the present case. The matter should have further legislative attention. Pending clarification by the Legislature, however, the Industrial Accident Commission, and this court, must deal with the legislation as it exists and with cases as they arise. In the circumstances it appears socially desirable and juridically proper to give the words "permanent partial disability" as used in section 4751 a liberal construction extending its benefits to the disabled employe. If an employe may properly be rated at 100 per cent disability to qualify him for the basic form of workmen's compensation, even though his earning power has not in truth, for practical purposes, been impaired,[2] it should be at least equally permissible to penetrate the fiction of 100 per cent disability and accept the truth of his remaining earning ability so that the further truth of a subsequent injury with increased actual disability may be compensated from the fund set up for that purpose.

For the reasons above stated the order of the commission is annulled and the matter is remanded for further proceedings consistent with the views expressed in this opinion.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I concur in the conclusion reached by the majority, but in the interest of uniformity of decision I deem it advisable to call attention to the inconsistency in the reasoning upon which the majority opinion here is based and the reasoning of the majority in the cases of *Bryant* v. *Industrial Acc. Com.*, 37 Cal.2d 215 [231 P.2d 32], *Aetna Life Ins. Co.* v. *Industrial Acc. Com.*, 38 Cal.2d 599 [241 P.2d 530], and *Garcia* v. *Industrial Acc. Com.*, 41 Cal.2d 689 [263 P.2d 8], in all of which last cited cases I dissented. In the last cited cases the mandate of liberal construction of the identical statutes here under consideration contained in Labor Code section 3202 was ignored by the majority. Had this mandate been followed the result in the last cited cases would have been favorable to the disabled employee as it is in this case.

---

[2]See cases cited, *ante,* pp. 367, 368.