[No. B039031. Second Dist., Div. Six. Jan. 30, 1990.]

TODOR BAIAS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, JOHN
ROMAN et al., Respondents.

**COUNSEL**

Glass & Seebode and Julia E. Seebode for Petitioner.

Miller & Folse, David J. DePaolo, Richard W. Younkin, William B. Donohoe and Neil P. Sullivan for Respondents.

**OPINION**

**GILBERT, J.**—We review a decision of respondent Workers' Compensation Appeals Board (Board) that applicant could not be awarded permanent disability indemnity because he was 100 percent disabled prior to sustaining the industrial injury.

We hold the Board erred in not awarding permanent disability indemnity.

In May 1984 applicant and his wife immigrated to the United States from Romania under the sponsorship of respondent John Roman. Prior to the immigration, applicant had suffered two or more strokes.

After arriving in the United States, applicant and his wife lived with Roman. According to the wife, she and applicant performed household chores for Roman six days a week and sold items for him at a swap meet on Sundays; and Roman paid each of them $20 a week. Elena Lunga, an acquaintance of applicant and Roman, testified she saw applicant sell items

for Roman at the swap meet and observed applicant working in Roman's upholstery shop and garden.

On March 10, 1985, applicant and his wife were sitting at separate tables at a swap meet. While applicant was selling pistachio nuts, he became thirsty. He was given a bottle of what he believed was lemonade but actually contained swimming pool chlorine. Upon drinking it, he sustained esophageal burns and another stroke, which rendered him comatose for 13 days. He is presently confined to a wheelchair, is incontinent, has difficulty speaking, is mentally disabled, and requires constant care. He was unable to testify in the workers' compensation proceedings.

The independent medical examiner opined applicant was 100 percent permanently disabled prior to the March 10, 1985, injury, and although prior to the injury he could walk, care for himself, and perform limited tasks, he could not have found employment in the open labor market.

Roman claimed applicant had never been Roman's employee and all the money he gave applicant and the wife was a gift so they could buy medicine.

The workers' compensation judge (WCJ), crediting the testimony of Lunga and applicant's wife and the opinion of the independent medical examiner, found applicant sustained injury on March 10, 1985, arising out of and occurring in the course of his employment with Roman, but "[a]pplicant was 100% disabled prior to the injury . . . , so that no permanent disability is found herein."

Both applicant and Roman petitioned the Board for reconsideration. The Board concluded that except on the issue of the amount of applicant's earnings, both petitions were without merit for the reasons reported by the WCJ. Applicant and Roman each petitioned this court for a writ of review. We summarily denied Roman's petition, but granted review of applicant's petition. The denial of Roman's petition is now final on the finding applicant was an employee of Roman at the time of the injury.

In *Smith* v. *Industrial Acc. Com.* (1955) 44 Cal.2d 364 [282 P.2d 64], an employee was earning wages as a sweeper even though he was 100 percent disabled. During this employment he sustained an industrial injury that resulted in 5 percent permanent disability. The Supreme Court held that he was entitled to benefits from the Subsequent Injuries Fund (SIF) because the industrial injury increased the employee's actual disability. The court held that an employee may receive a permanent disability rating of 100 percent and be entitled to the disability payments incident to such rating although he is able to return to work at the wages he received before the

injury that caused disability. The court distinguished between "a formula or rule-established '100 per cent disability' for certain rating purposes, and actual total disability insofar as productive work or compensated employment is concerned." (*Id.* at pp. 367-368.)

The court reasoned further that "[i]f an employe may properly be rated at 100 per cent disability to qualify him for the basic form of [workers'] compensation, even though his earning power has not in truth, for practical purposes, been impaired, it should be at least equally permissible to penetrate the fiction of 100 per cent disability and accept the truth of his remaining earning ability so that the further truth of a subsequent injury with increased actual disability may be compensated from the fund set up for that purpose." (44 Cal.2d at p. 370, fn. omitted.)

The *Smith* reasoning was reiterated as settled law in *Dahlbeck v. Industrial Acc. Com.* (1955) 135 Cal.App.2d 394, 403-404 [287 P.2d 353]. Other cases have allowed disability benefits for an injury sustained by an employee who was theoretically 100 percent disabled prior to the injury. (*Moyer v. Workmen's Comp. Appeals Bd.* (1972) 24 Cal.App.3d 650 [100 Cal.Rptr. 540]; *State of California v. Industrial Acc. Com.* (*Corsinotti*) (1961) 196 Cal.App.2d 10 [16 Cal.Rptr. 323]; see Cal. Workers' Compensation Practice (Cont.Ed.Bar 1985) Benefits, Costs, & Penalties, § 14.41, p. 579; 2 Hanna, Cal. Law of Employee Injuries & Workmen's Compensation (2d ed. 1989) Permanent Disability, § 14.05[2], pp. 14-64–14-65.)

In *Moyer v. Workmen's Comp. Appeals Bd., supra*, 24 Cal.App.3d 650, an employee sustained an industrial heart injury resulting in 100 percent permanent disability. Prior to this injury the employee had a 33 percent permanent disability from hearing loss and a preexisting cardiovascular partial permanent disability. The Board found that because the employee was totally disabled due to his heart condition, it could not consider the preexisting hearing disability for SIF purposes.

The court rejected this approach because it is based on the mistaken notion that a 100 percent permanent disability rating is the equivalent of actual total disability as it relates to productive work or compensated employment. If successive injuries produce separate and independent diminutions in the ability of the injured employee to compete in an open labor market, then each is properly rated separately without concern for the theoretical 100 percent assigned to total disability, and each may be considered in determining liability of SIF. (24 Cal.App.3d at p. 657.)

The court also noted there are two competing policies: (1) industry should bear the cost of disability resulting from risks incident to producing goods or services, and (2) industry should be encouraged to employ or retain as employees persons with permanent partial disability. (24 Cal.App.3d at pp. 661-662.) The court concluded the latter policy was paramount and the employer should not have been held liable for the worker's entire disability. (*Id.* at pp. 662-663.)

In *State of California* v. *Industrial Acc. Com. (Corsinotti), supra,* 196 Cal.App.2d 10, the applicant had a mental age between four and seven years; nevertheless, he bundled old newspapers in a sheltered workshop. Although he earned $2.50 a week, he paid $15 a month for the privilege of participating in the sheltered workshop. The applicant sustained industrial injury, and the Industrial Accident Commission awarded permanent disability indemnity payable by SIF. The court affirmed the award even though the applicant was deemed not employable in the open labor market prior to the injury. The court stated that the reality of the potential preinjury earning power punctures the fiction of presumed total incapacity. (*Id.* at p. 17.)

■ Here, applicant, despite being theoretically unable to compete in the open labor market prior to sustaining the industrial injury, actually performed remunerative work as an employee of Roman and sustained industrial injury in the course of this employment. In the circumstances, the WCJ and Board erred in relying on the fiction that applicant was totally disabled and thus theoretically unable to work in the open labor market prior to the injury. This may not be a reason for refusing to award permanent disability indemnity. Instead, the WCJ and the Board must look at reality. Applicant was in fact performing remunerative work when he sustained the injury.

On remand the Board shall award appropriate permanent disability indemnity resulting from the combined effect of the industrial injury sustained by applicant in the course of his employment by Roman and applicant's preexisting disability; and the Board shall consider and determine the respective liabilities of defendants John Roman, Subsequent Injuries Fund, and Uninsured Employers Fund, bearing in mind the question whether the industrial injury resulted in a separate and independent disability.

The November 10, 1988, decision of respondent Workers' Compensation Appeals Board is annulled; and the matter is remanded to the Board for further proceedings consistent with the views expressed herein.

Stone (S. J), P. J., and Abbe, J., concurred.